PAIGE GIANNETTI *et al.*, Plaintiffs and Counterdefendants-Appellants, v. LAILA ANGIULI, Defendant and Counterplaintiff-Appellee.

Second District   No. 2—93—0307

Opinion filed June 14, 1994.

Patrick J. Cullinan, of Smith, Williams & Lodge, Chartered, of Chicago, for appellants.

Denis J. McKeown, of Waukegan, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

In this real estate contract case, plaintiffs, Paige and Robert Giannetti, appeal the trial court's order granting summary judgment to defendant, Laila Angiuli. We reverse and remand.

On July 24, 1992, Paige and Robert Giannetti (plaintiffs or buyers) filed a complaint against defendant, Laila Angiuli (defendant or seller) for breach of contract and conversion. Plaintiffs sought to recover the $15,000 earnest money they deposited toward the purchase of a parcel of land owned by defendant. Defendant filed a counterclaim for breach of contract and also sought the award of the earnest money. Plaintiffs and defendant filed cross-motions for summary judgment; plaintiffs also filed a motion to dismiss defendant's counterclaim. On February 17, 1993, the trial court denied plaintiffs' motion for summary judgment and their motion to dismiss the counterclaim and granted defendant's motion for summary judgment. The court awarded defendant the sum of $15,000 plus the costs of suit; the order was filed on February 18, 1993.

■ Plaintiffs timely appeal, contending that (1) the trial court erred in allowing a forfeiture of the earnest money because the law does not favor forfeitures and a forfeiture would be inequitable in the present case; (2) the trial court should have applied the doctrine of estoppel (an affirmative defense) to prevent the forfeiture of the earnest money; and (3) the trial court erred in not finding that the principle of waiver precluded defendants from insisting on strict compliance with the terms of the real estate contract. The parties tendered cross-motions for summary judgment suggesting there was no issue of a material fact. The trial judge stated and the parties affirmed that the parties consented to have the matter conclude by a hearing for summary judgment rather than going to trial. We deem whether or not the parties conclude there was no issue of material fact and waive the issue is not for the parties to determine. The mere filing of cross-motions for summary judgment and the invitation to the trial court to decide the issue on the record does not establish there is no issue of a material fact. (*Andrews v. Cramer* (1993), 256 Ill. App. 3d 766, 769.) As in all cases involving summary judgment, we review the evidence in the record *de novo*. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 411; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 131-32.) An appellate court

reviews summary judgment orders *de novo.* (*Schulenburg v. Rexnord, Inc.* (1993), 254 Ill. App. 3d 445, 449; *Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60.) We conclude that there existed genuine issues of material and disputed facts, making this case unsuitable for summary judgment. We therefore reverse the judgment and remand the cause for further proceedings.

The record reveals that, on March 5, 1992, the parties executed a real estate contract wherein plaintiffs agreed to purchase "lot 5" on South Ridge Road in Lake Forest, Illinois, for $150,000. The contract was subject to certain contingencies. Paragraph 2 stated in pertinent part:

> "This contract is contingent upon the ability of the Purchaser to secure within 45 days of Seller's acceptance, a commitment for a loan evidenced by a note to be secured by a mortgage or trust deed on the real estate in the amount of 80% or such lesser amount as Purchaser shall accept, with a fixed interest rate not to exceed 9.5%.

> If Purchaser makes a good faith effort but is unable to obtain a commitment for the mortgage loan contemplated herein, Purchaser shall so notify Seller in writing within the time specified in paragraph 2. IF SELLER IS NOT SO NOTIFIED WITHIN SUCH TIME PERIOD, PURCHASER SHALL FOR ALL PURPOSES BE DEEMED TO HAVE SECURED SUCH COMMITMENT OR TO HAVE AGREED TO PURCHASE THE REAL ESTATE WITHOUT MORTGAGE FINANCING OR BASED UPON THE MORTGAGE COMMITMENT ACTUALLY OBTAINED."

The agreement recited, among other things, that the closing date would be May 5, 1992. Initially, a check for $1,000 was deposited with the real estate broker as earnest money. Within 14 days of the seller's acceptance, 10% of the purchase price was to be deposited as earnest money. Paragraph 10 also stated in pertinent part:

> "This contract is contingent upon the approval hereof as to form by the attorneys for Purchaser and Seller within 7 days after Seller's acceptance of this contract. Unless written notice of disapproval is given within the time period specified above, this contingency shall be deemed waived and this contract will remain in full force and effect. If written notice of disapproval is given within the time period specified above, then this contract shall be null and void and the earnest money shall be returned to Purchaser. The notice of disapproval may be given by either party hereto or by their respective attorney. For purposes of this contingency, the written notice of written disapproval must be personally delivered and shall be deemed given and be effective as of the date when such notice is received by Seller or by Listing

Broker as agent for Seller, if such notice of disapproval is being made on behalf of Purchaser."

After the execution of the real estate sales agreement, attorney Thomas P. Egan was retained by the buyers to represent them. According to Egan's affidavit submitted in support of plaintiffs' motion to dismiss the counterclaim and for summary judgment, Egan learned on March 11, 1992, via facsimile transmission (fax) from Robert Giannetti that the seller was represented by attorney John Galley. In the affidavit, Egan also stated that he transmitted a notice of disapproval of the terms of the March 5 contract by fax to Galley, and the notice of disapproval consisted of the March 5 contract to which he attached a rider which he claimed substantially altered the terms of the March 5 agreement. He stated that he was not informed by the seller or Galley that his notice of disapproval was untimely or otherwise ineffective. Egan also stated that, on March 12, 1992, Galley telephoned him and stated his disapproval of the terms of the rider and that Galley would be adding his own rider to the rider Egan sent. On April 25, 1992, a copy of the rider with the signature of defendant was sent to the plaintiffs by their real estate broker which was then forwarded to Egan. The text of the rider contained handwritten changes from that drafted by Egan which were initialed by defendant alone. Egan then made further changes. He claimed that it was not until early May 1992 (later determined by the trial court to be April 29) that a rider with all the changes and an amendment to the rider were fully executed by all the parties.

The final version of the rider included terms related to the following issues: (1) the title commitment was to be provided at the seller's expense no later than 3 (rather than 15) days before closing; (2) the survey to be provided; (3) that seller would pay any county transfer tax; (4) if purchaser failed to close for any reason not excused by the contract, the seller's sole remedy would be retention of the earnest money; (5) the nature of the real estate agents' relationship to seller and purchaser; (6) representations regarding unrecorded easements, covenants, restrictions and zoning; and (7) representations regarding the absence of hazardous substances on the property. The amendment to the rider modified it so that all parties would have any remedy available and that Remax of Lake Forest would be included with Koenig & Stray, Inc., in item No. 5 regarding broker status and fees.

On April 14, 1992, Egan sent defendant a letter stating that the Giannettis had submitted the necessary paper work to their lender and they were qualified for a loan for the property. However, the letter further stated that the approval for the loan "may not occur

until shortly after expiration of the mortgage contingency period in the contract dated March 5, 1992 between you and the Gianettis [*sic*]." The letter sought to extend the mortgage contingency for 15 days and asked for an acknowledgement of the extension. This extension was apparently granted by seller.

On May 14, 1992, Egan faxed a letter stating that the lender the plaintiffs had contacted had denied their application and the loan underwriter agreed to reconsider the application based on new information. The letter noted that plaintiffs had contacted a number of lenders and that "further efforts may be futile." The letter further stated:

"We realize the seller is anxious to close on the property and that there has been extraordinary delay due to the contract negotiations taking so many weeks. We also realize that the seller may be frustrated waiting on financing during the entire mortgage contingency period which runs until sometime in June since the Contract Rider was finally executed by the parties only last week. In order to not tie up the property for the entire mortgage contingency period, if the Giannettis do not have strong assurance of financing during next week we will send notice pursuant to the contract and obtain a refund of the earnest money."

According to the deposition of Galley, he did not make a direct response to this letter because his discussion with the broker led him to believe that the plaintiffs would be approved for the loan and the deal would be consummated making the points raised in the letter essentially irrelevant.

On May 22, 1992, Egan notified seller's attorney by fax that, upon reconsideration, the Advantage Bank had refused the plaintiffs request for financing and that plaintiffs had contacted a substantial number of lenders and could not obtain financing. The letter further stated, "Having made such good faith effort to obtain financing, the Giannettis hereby notify the Seller that they are unable to obtain the commitment for the mortgage loan contemplated by the Real Estate Contract. As such, the Giannettis request a return of all funds given to Koenig & Stray as earnest money for this transaction."

On June 1, 1992, defendant's attorney sent a letter to plaintiffs' attorney stating that plaintiffs' letter of May 22, 1992, requesting the return of the earnest money had been considered and the request was being denied because plaintiffs had breached the contract and the earnest money would be retained as liquidated damages. Defendant's letter stated that (1) defendant rejected the argument that contract negotiations took place over several weeks after the signing of the real estate contract by the parties because the substantive and material terms of the contract were finalized on

March 5, 1992; (2) the contract attorney approval provision limited attorney changes to form only, the "clarifications" requested by plaintiffs did nothing to change the material terms of the contract which had already been formed, and the time limits in the contract began on March 5; (3) plaintiffs' letter of April 14, 1992, requesting an extension of the mortgage contingency confirmed plaintiffs' own understanding that the time limits began on March 5; (4) the law and custom supported defendant's contention that contract formation occurred on March 5; (5) plaintiffs' failure to request additional time for a mortgage contingency after the expiration of the first extension committed plaintiffs to purchase unconditionally; and (6) plaintiffs' letter of May 22, 1992, was a statement of plaintiffs' intention not to complete the contract, and plaintiffs were considered in breach of the contract.

The deposition of John R. Galley, defendant's attorney, shows that he initially believed that the notice of plaintiffs' attorney's disapproval reached him within the requisite time period, but he could not recall the precise day. He first thought it was within five days of March 5, 1992. He telephoned Egan to bring to his attention some matters he thought were incorrectly stated in the rider, including the identification of the broker information. He found Egan's attempt to limit the plaintiffs' remedy unacceptable and eventually prepared his own modifications to the rider. He thought the amendment was prepared late in March and mailed the amendment and the rider to defendant on April 1.

In his deposition, Galley stated he believed these modifications were essentially fine procedural points rather than substantive terms of the contract and he was merely trying to accommodate the plaintiffs. Galley believed that attorney changes to the original contract were limited to changes in form rather than in substance. Even after plaintiffs' letter of May 14, Galley believed the transaction would be consummated based on the broker's information which seemed to confirm this view. Galley also qualified his earlier testimony concerning when he first received the notice or rider from Egan. Galley stated that the rider to the real estate contract dated March 12, 1992, was first received by fax at 11:21 a.m., on March 16 (rather than March 12), from Tom Glusic of Remax of Lake Forest. He recalled that he received it from Glusic rather than from Egan; he stated that Egan was not aware that Galley was representing defendant at the time. Galley further stated he did not receive a certified or registered letter or a personal delivery of the proposed modifications.

In their response to defendant's motion for summary judgment,

plaintiffs argued that the timeliness of Egan's disapproval of the real estate contract was a question of fact. Plaintiffs argued that, whether the notice was sent on March 12, 1992, or March 16, it was undisputed that Galley subsequently communicated to Egan his disapproval of Egan's proposed rider and indicated that he would add his own rider to Egan's. Ultimately, the final changes were executed by the parties late in April (April 24 according to plaintiffs) as one package. Plaintiffs maintained that by agreeing to incorporate the changes into the original agreement of March 5 defendant waived the time limitation within which Egan could modify the agreement. Plaintiffs argued that defendant was also waiving the time constraints of the original contract. In their response, plaintiffs further argued that defendant was estopped from asserting that plaintiffs' failure to give her notice within 45 days of the March 5 agreement entitled her to retain the earnest money. Plaintiffs believed that they were reasonably induced to rely on defendant's representations as manifested by their conduct and, as a result, to change their position to their injury. Plaintiffs concluded that defendant's intent was to allow the time for financing approval to extend past May 4 (the final date of the extension period) because after the receipt of plaintiffs' letter of May 14, defendant was aware that plaintiffs were having difficulty in obtaining financing, and Galley did not contact Egan. Instead, Galley contacted the broker and concluded that the deal would proceed.

After hearing the arguments of counsel, the trial court made its findings on February 17, 1993. There is no report of the earlier portion of the proceedings containing the arguments of counsel. The court found that it was the intention of the parties to form a valid contract on March 5, 1992. The court noted that the modifications were prepared by Galley sometime in April, and the court treated April 29 as the date the final version of the rider was signed by the parties. The court considered the letters written by plaintiffs in May and the affidavit of an employee of the Illinois Bell Telephone Company stating that she researched the records of the fax number from plaintiffs' attorney's office from March 10 to March 17. The court observed that there was no indication that anything was faxed by Egan to Galley, contrary to Egan's affidavit. The court observed that the rider had a fax recordation showing March 16, 1992, at 11:21 a.m. and showing "Remax, Lake Forest" with telephone number 708-295-6244. This indicated to the court the rider was received on March 16, 1992, four days beyond the seven-day attorney disapproval period stated in the contract. The court considered the affidavit of Galley, who stated that he received the changes via fax on March 16. The court found that a contract existed between the

parties on March 5, 1992, and that any time periods would begin to run as of March 5; that the riders would be amendments to matters unrelated to the purchase price or the earnest money; that the expiration date of the attorney approval was March 12 and the fax was received by the seller's attorney on March 16; that the suspension of the mortgage contingency period was granted by the seller on April 14 and that on April 29 a rider was signed by the parties; that the financing contingency extension expired on May 4 pursuant to the terms of the March 5 contract; and that the request for the return of the $15,000 in earnest money occurred on May 22, which was 18 days later than the date required by the contract. The court granted relief to defendant and denied it to the plaintiffs, noting that the parties had consented to have the matter concluded by hearing on the motions for summary judgment rather than by trial.

Before considering the merits of plaintiffs' appellate arguments, we iterate the rules pertaining to summary judgment proceedings. "Summary judgment, although a salutary procedure in administering justice, should be granted with caution so that no party's right to trial is usurped in the presence of conflicting facts and inferences." (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539.) It is appropriate "when the pleadings and other evidence show there is no triable issue of material fact." (*Bresler*, 159 Ill. App. 3d at 539.) Summary judgment is proper where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law; however, it should be granted "only when the party's right to it is clear and free from doubt." (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164.) The function of the summary judgment procedure is to determine the existence or absence of triable issues of fact, not to try them. (*Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 387.) Inferences may only be drawn from undisputed facts, and, if fair-minded persons may draw differing inferences from these undisputed facts, this presents a material issue to be tried. *Wysocki*, 124 Ill. App. 3d at 164.

We are aware that, when all parties file motions for summary judgment, the court is invited to decide the issues thus presented as a question of law and the entry of summary judgment for one party or the other may be proper (*Bresler*, 159 Ill. App. 3d at 540). However, where a factual question regarding a material issue exists, summary judgment is nevertheless inappropriate. *Bresler*, 159 Ill. App. 3d at 540; *Nussbaum v. Williams* (1980), 86 Ill. App. 3d 272, 277.

Summary judgment is a proper procedure where only the construction of language and the validity of a contract are at issue

(*Jones v. Seiwert* (1987), 164 Ill. App. 3d 954, 957) and there is no dispute as to the language and formation of the agreement (*Peters & Fulk Realtors, Inc. v. Shah* (1986), 140 Ill. App. 3d 301, 305). However, it is a question of fact whether a breach of contract has occurred (*Vicorp Restaurants v. Corinco Insulating Co.* (1991), 222 Ill. App. 3d 518, 524) or whether the agreement contains an ambiguity which requires the admission of extrinsic evidence (*Rogers v. Balsley* (1993), 240 Ill. App. 3d 1005, 1010). Summary judgment is particularly inappropriate where, as here, the parties seek to draw inferences on questions of intent. See *Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060 (course of conduct may act as consent to contract, but it must be clear exactly what the conduct relates to).

On appeal, plaintiffs first argue that the court erred in permitting a technical forfeiture because it was unjust to do so under the circumstances (citing *Rogers v. Balsley* (1993), 240 Ill. App. 3d 1005 (method of notification was nonmaterial breach of contract provision and should not result in forfeiture where actual notice was received)). Plaintiffs assert that the continuing course of conduct of defendant in agreeing to modify the contract led them to believe that strict adherence to the original contract's timing provisions would not be required. Plaintiffs still maintain on appeal that defendant received notice of their attorney's disapproval sometime between March 12 and March 16, but urge that, even if the notice was late, the ensuing conduct lulled them into a false assurance that strict compliance with the timing provision would not be required. Plaintiffs' argument is rooted in the principle of waiver: "A party to a contract may not lull another into a false assurance that the strict compliance with a contractual duty will not be required and then sue for noncompliance." *Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343.

■ Whether a party's course of conduct waives strict compliance with a contractual provision and results in forfeiture is generally a question of fact; such a question is unsuitable for disposition by way of summary judgment. *Smith v. Sturgeon* (1976), 35 Ill. App. 3d 750, 751; see *Nelson v. Estes* (1987), 154 Ill. App. 3d 937 (oral modification of written contract and defendant's detrimental reliance on plaintiff's waiver were factual questions precluding summary judgment despite time of the essence provision).

■ Plaintiffs also argue that defendant should be estopped from retaining the earnest money. Equitable estoppel is a doctrine that is invoked to prevent fraud and injustice and arises whenever a party, by his word or conduct, reasonably induces another to rely on his representations and leads another, as a result of that reliance, to change his position to his injury. (*Payne v. Mill Race Inn* (1987), 152

Ill. App. 3d 269, 276-77.) Whether the circumstances of the parties' conduct results in estoppel to prevent injury to a party or to prevent injustice is also a question of fact to be determined at trial. See *Lawrence v. Board of Education of School District 189* (1987), 152 Ill. App. 3d 187, 201; *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 96; *Smith*, 35 Ill. App. 3d at 751.

■ In the case at bar, the court was not asked merely to construe the unambiguous provisions of the real estate contract. Rather, the following nonexhaustive list of factual questions needed to be resolved: (1) whether the parties intended that the March 5, 1992, agreement be the final and complete agreement between them in view of the alleged continuing "negotiations" after March 12, 1992; (2) whether the time provisions of the March 5, 1992, agreement could still control the determination of a breach of contract by plaintiffs in view of the subsequent conduct of the parties and the modifications to the original agreement; (3) the resolution of the conflicting affidavits of Egan and Galley together with other communications and their understanding of when a final agreement was effectuated (see *Lundin*, 29 Ill. App. 3d at 1065 (opposing affidavits present a factual issue requiring trial); (4) whether defendant's conduct in granting the extension of the financing contingency and the failure to reply to plaintiffs' letter on May 14 constituted either waiver of the time provisions or estoppel to demand strict compliance of the forfeiture provision; and (5) which agreement controlled the time and forfeiture provisions, the original agreement or the agreement with modifications executed late in April or early in May. The ultimate question of course was whether plaintiffs materially breached the contract so as to justify the forfeiture.

The underlying question is the understanding and intent of the parties as to when a binding agreement was reached and whether any of the requirements were relaxed so that a forfeiture would be unjust under the circumstances. In this case, whether the parties intended to be bound to the March 5 agreement or any other and to what extent they intended to be bound are genuine issues of material fact precluding summary judgment. (See *Wysocki v. Bedrosian*, 124 Ill. App. 3d at 168-69.) The party seeking to enforce the forfeiture must prove that the right to forfeiture is clear and unequivocal and that the exercise of the right will cause no injustice. *Jones v. Seiwert*, 164 Ill. App. 3d at 957.

Because the facts here are susceptible to different inferences by fair-minded persons, the case was inappropriate for summary judgment. Defendant's right to judgment is not free from doubt, and, under the circumstances, any motion for summary judgment should

have been denied notwithstanding the desire of the parties to use this procedure.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings. On remand, the triable issues are not limited to the nonexhaustive list of factual questions just presented here for purposes of illustration.

Reversed and remanded.

McLAREN and DOYLE, JJ., concur.