No. 2--96--0891

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

DIANA L. RUMFORD, f/k/a Diana        )  Appeal from the Circuit Court

L. Leonard, Indiv., and on           )  of Lake County.

Behalf of Others Similarly           )

Situated,                            )  No. 95--CH--668

                                     )

     Plaintiff-Appellant,            )

                                     )  

v.                                   )

                                     )

COUNTRYWIDE FUNDING CORPORATION,     )  Honorable

                                     )  Jack Hoogasian,

     Defendant-Appellee.             )  Judge, Presiding.

________________________________________________________________

     JUSTICE McLAREN delivered the opinion of the court:

     Plaintiff, Diana L. Rumford (f/k/a Diana L. Leonard), filed a

two-count amended complaint against defendant, Countrywide Funding

Corporation, alleging breach of contract and violation of the

Consumer Fraud and Deceptive Business Practices Act (the Act) (815

ILCS 505/1 et seq. (West 1994)).  The parties filed cross-motions

for summary judgment.  Following a hearing, the court granted

defendant's motion.  Plaintiff appeals, and we reverse and remand.

     Plaintiff filed her amended complaint as a class action on

behalf of herself and all others similarly situated.  She defined

the class as all people who entered into mortgage contracts with

defendant, whereby defendant agreed under the terms of the

contracts to release the mortgage instruments without charge when

the mortgages were paid off, but then imposed an additional charge

at the time the mortgages were released.

     In her amended complaint, plaintiff alleged that she entered

into a mortgage contract with defendant.  Plaintiff provided

security to defendant for the repayment of a $30,000 note. 

Paragraph 21 of the mortgage contract provided "Upon payment of all

sums secured by this Security Instrument, Lender shall release this

Security Instrument without charge to Borrower.  Borrower shall pay

any recordation costs."  On or about November 22, 1993, defendant

sent a letter, entitled "STATEMENT OF ACCOUNT FOR PAYMENT IN FULL," 

(hereinafter account statement or payoff letter) to plaintiff's

attorney.  Plaintiff attached the payoff letter and the contract to

the complaint.  In addition to the outstanding principal balance

and interest, the payoff letter included a $50

"reconveyance/statement fee" and a $15 "prepayment penalty/other"

charge.  These amounts were included in the balance of $26,786.21

needed to pay the account in full.  Plaintiff paid the total amount

due, including the $50 and $15 fees, and obtained a release deed

from the defendant.  

     Count I of the amended complaint alleged breach of contract. 

Plaintiff alleged that she performed all of the terms and

conditions of the mortgage contract, but that defendant breached

the contract by charging fees in violation of the contract's

express terms.   Count II alleged a violation of section 2 of the

Act (815 ILCS 505/2 (West 1994)), which declares as unlawful:

          "Unfair methods of competition and unfair or deceptive

     acts or practices, including but not limited to the use or

     employment of any deception, fraud, false pretense, false

     promise, misrepresentation or the concealment, suppression or

     omission of any material fact, with intent that others rely

     upon the concealment, suppression or omission of such material

     fact ***."  815 ILCS 505/2 (West 1994).

     Defendant moved for summary judgment, relying on the affidavit

of one of its first vice-presidents, Rick Wilson.  The gist of the

motion was that only fees for releasing the mortgage were

prohibited, and the fees defendant assessed plaintiff were not for

releasing the mortgage.  Wilson stated in his affidavit that he has

worked in defendant's remittance processing division since February

1992 and has been in the mortgage business for 23 years.  Wilson

had personal knowledge of defendant's policies with respect to

providing account statements to customers.  Wilson stated that

defendant accepts account statement requests from its customers or

its customers' agents.  When defendant receives such a request, it

generates an account statement by computer.  Defendant also updates

the customer's file and provides the customer with an amended

statement if any changes occur that would affect the amount listed

in the original statement.

     Wilson further stated that defendant charges its customers $50

for processing the request for an account statement.  The charge is

intended to compensate defendant for providing an amended statement

when necessary.  Defendant bills its customers for this service by

including the $50 fee on the account statement.  Defendant will

send the statement to the customer by facsimile if the customer so

requests.  The fee for doing so is $15.  According to Wilson,

defendant informs the individual requesting the statement that

there is an additional charge for receiving the statement by

facsimile and so informed plaintiff's attorney when she requested

the account statement.

     Wilson's affidavit further stated that defendant releases a

customer's mortgage when the principal and interest are paid in

full.  If a customer pays the principal and interest, but not the

$50 and $15 fees, defendant will still release the mortgage even

though the customer remains liable for the fees.  On hundreds of

occasions, defendant has released mortgages when a customer who is

liable for statement and facsimile fees did not pay those fees. 

According to Wilson, plaintiff's attorney requested the account

statement.  Defendant charged plaintiff $50 for processing the

statement request and $15 to send it by facsimile.  Plaintiff never

asked defendant to release her mortgage without payment of the

fees.  If she would have paid principal and interest only,

defendant would have released the mortgage, but plaintiff still

would have been liable for the fees.

     In response, plaintiff also moved for summary judgment.  In

her supporting memorandum, plaintiff reiterated the allegations of

her complaint regarding the language of the contract and the payoff

letter.  She attached the payoff letter to her memorandum. 

Plaintiff argued that defendant was now trying to rewrite the

payoff letter by stating that a "reconveyance/statement fee" is a

fee for processing a request for an account statement and that a

"prepayment penalty/other" is a facsimile fee.  Plaintiff further

argued that the explanation for the charges is irrelevant because

the contract provides that the mortgage is to be released without

charge to the borrower.  With respect to Wilson's statement that a

mortgage would be released upon payment of only principal and

interest, plaintiff pointed out that such an assertion was not made

in the payoff letter and that defendant included the charges in the

amount necessary to pay the account in full.

     Defendant filed a reply in which it argued that Wilson's

affidavit was uncontroverted and refuted the allegations of the

complaint.  Defendant argued that plaintiff was not charged for the

release of her mortgage.  Defendant further argued that payment of

plaintiff's note was to be made in California and that California

law allows a mortgagee to charge a fee, not to exceed $60, for an

account statement.  In support, defendant filed a supplemental

affidavit of Rick Wilson.  In the affidavit, Wilson states that a

customer may find out an account balance by speaking to a customer

service agent, by using defendant's automated balance service, by

referring to the quarterly report that summarizes the account

status, or by requesting an account statement.  Defendant only

charges borrowers who request an account statement.  Wilson further

stated that plaintiff's note required her to make payments to

defendant's California office.

     Following a hearing, the court entered summary judgment for

defendant, and plaintiff timely appealed.  On appeal, plaintiff

argues that defendant's evidence was inherently incompetent,

suspect, and/or unbelievable.  Plaintiff asks us to reverse the

trial court's decision and enter summary judgment in her favor or,

in the alternative, to reverse and remand the cause for further

proceedings.

     Summary judgment is properly granted if "the pleadings,

depositions, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of

law."  735 ILCS 5/2--1005(c) (West 1994).  The purpose of summary

judgment is not to try questions of fact, but to determine whether

such questions exist.  Gilbert v. Sycamore Municipal Hospital, 156

Ill. 2d 511, 517 (1993).  In determining whether a genuine issue of

fact exists, the court must construe the evidence strictly against

the moving party.  Guerino v. Depot Place Partnership, 273 Ill.

App. 3d 27, 30 (1995).  The nonmovant need not prove his case at

the summary judgment stage (Bickerman v. Wosik, 245 Ill. App. 3d

436, 438 (1993)), but must come forward with evidentiary material

that establishes a genuine issue of material fact (Salinas v.

Chicago Park District, 189 Ill. App. 3d 55, 59 (1989)).  Summary

judgment will be granted only when the right of the moving party is

clear and free from doubt.  Guerino, 273 Ill. App. 3d at 30.  

     We review summary judgment orders de novo.  Monticello

Insurance Co. v. Wil-Freds Construction, Inc., 277 Ill. App. 3d

697, 701 (1996).  Where the parties file cross-motions for summary

judgment, they invite the court to decide the issues presented as

a question of law.  Giannetti v. Angiuli, 263 Ill. App. 3d 305, 312

(1994).  Nevertheless, where there are factual questions on

material issues, summary judgment is inappropriate.  Giannetti, 263

Ill. App. 3d at 312.

     Both parties argue on appeal that they were entitled to

summary judgment.  However, our review of the record indicates that

there were material issues of fact, and summary judgment should not

have been granted for either side.  In Giannetti, we stated the

rules for when summary judgment should be granted in a contract

case:

          "Summary judgment is a proper procedure where only the

     construction of language and the validity of a contract are at

     issue [citation] and there is no dispute as to the language

     and formation of the agreement [citation].   However, it is a

     question of fact whether a breach of contract has occurred

     [citation] or whether the agreement contains an ambiguity

     which requires the admission of extrinsic evidence [citation]. 

     Summary judgment is particularly inappropriate where *** the

     parties seek to draw inferences on questions of intent." 

     Giannetti, 263 Ill. App. 3d at 312-13.

     Defendant argues that, because plaintiff did not file

counteraffidavits, the trial court properly entered summary

judgment for defendant.  We disagree.  We explained in Pease v.

International Union of Operating Engineers Local 150, 208 Ill. App.

3d 863, 874 (1991), that, where a movant in a summary judgment

proceeding supplies uncontradicted facts that would entitle the

movant to a judgment as a matter of law, the nonmovant cannot rely

on his complaint or answer alone to raise a genuine issue of

material fact.  We also explained that, "even though a party

opposing a motion for summary judgment fails to file

counteraffidavits, the movant is not entitled to summary judgment

unless his motion and supporting affidavits establish his right to

summary judgment as a matter of law."  Pease, 208 Ill. App. 3d at

874.

     Here, plaintiff was not relying on her complaint alone to

raise a genuine issue of material fact.  She was relying on the

contract between the parties and the account statement that was

generated by defendant's own payoff department.  Wilson's affidavit

contradicted those documents.  Rather than establishing defendant's

right to a judgment as a matter of law, Wilson's affidavit created

the fact questions.  Plaintiff relied on a contract that provided

"Upon payment of all sums secured by this Security Instrument,

Lender shall release this Security Instrument without charge to

Borrower" and an account statement supplied by defendant that

included in her account balance a "reconveyance/statement fee" of

$50 and a "prepayment penalty/other" charge of $15.  Wilson's

affidavit was an explanatory denial of what the payoff letter

indicates.  By stating that a "reconveyance/statement fee" was

really a fee for processing plaintiff's request for a statement of

her account balance and that a "prepayment penalty/other" was a

facsimile fee, Wilson's affidavit did nothing more than create

questions of material fact as to whether defendant breached the

contract.  To grant summary judgment for defendant, the trial court

would have had to do what the court is not supposed to do at the

summary judgment stage--weigh the evidence.  Further, the trial

court would have had to make a credibility determination that

Wilson was telling the truth in his affidavit, although that

affidavit was contradicted by documents generated by defendant.  

     We wish to reiterate that, although uncontradicted statements

of fact in an affidavit must be taken as true for purposes of a

summary judgment motion, the moving party is not entitled to

summary judgment merely because the opposing party fails to file a

counteraffidavit.  Here, the documents attached to plaintiff's

complaint--the contract and the payoff letter--contradicted

Wilson's affidavit, and plaintiff was entitled to rely on that

evidence to create a genuine issue of material fact.

     We find that the contradictions between the payoff letter and

the affidavit created fact questions precluding summary judgment on

both the breach of contract and the consumer fraud counts. 

Defendant argued in the trial court that summary judgment was

proper on the consumer fraud claim because the Act has been held

not to apply to simple breach of contract claims.  See Golembiewski

v. Hallberg Insurance Agency, Inc., 262 Ill. App. 3d 1082, 1093

(1994).  However, we find that plaintiff's consumer fraud claim was

not based on a simple breach of contract but on an allegation that

defendant was engaged in a pattern of misrepresenting to customers

that additional charges would not be assessed at the time their

mortgages were released.   For the reasons previously stated, we

find that material issues of fact remained on this issue.

     The judgment of the circuit court of Lake County is reversed,

and the cause is remanded for further proceedings consistent with

this opinion.

     Reversed and remanded.

     BOWMAN and THOMAS, JJ., concur.