NOTICE

Decision filed 08/27/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190218-U

NO. 5-19-0218

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JANET ARCHER, JAMES HALLMARK, and KRISTY HALLMARK, | ) ) | Appeal from the Circuit Court |
| | ) | Effingham County. |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16-CH-3 |
| | ) | |
| LIBERTY TOWNSHIP; SHANE BRANDT, in His Official Capacity as Liberty Township Highway Commissioner; and GREGORY KOESTER, in His Official Capacity as Effingham County Highway Commissioner, | ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Janet Archer, Plaintiff-Appellant; Liberty Township and Shane Brandt, in His Official Capacity as Liberty Township Highway Commissioner, Defendants-Appellees). | ) ) ) ) ) | Honorable James J. Eder, Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting summary judgment for Liberty Township and its highway commissioner and denying abandonment of a road is vacated where issues of material fact remain.

¶ 2    Plaintiff, Janet Archer (Archer), appeals from the trial court's order granting Liberty Township and Shane Brandt's (collectively the Township) motion for summary judgment. On

1

appeal, Archer contends that the trial court's order was in error because material facts exist that preclude summary judgment. For the following reasons, we reverse.

¶ 3                              I. BACKGROUND

¶ 4     On January 26, 2015, plaintiffs, Archer, James Hallmark (Hallmark), and Kristy Hallmark (Kristy), filed a petition to vacate a piece of the road on North 200th Street, Liberty, Illinois. The maps and legal descriptions contained in the record reveal that North 200th Street is approximately one mile long and comprised of four sections. The first section is approximately 1068.88 feet and runs south from Highway 33 to Hallmark's driveway. This section is paved and maintained by the Township. The second section is a dirt road right-of-way continuing south from Hallmark's driveway and across Archer's property. This section is approximately 300 feet and is the subject of this appeal. The third section continues south as a dirt road from Archer's property approximately 1018.88 feet. This section was vacated in 1994 and is now owned by George Devore (Devore).[1] The final section continues south from Devore's vacated road approximately 2887.76 feet and eventually intersects with 1800th Avenue. The road also contains a washed-out bridge; however, it is unclear from the record whether the bridge was on Devore's vacated road or the last section of the road. The condition of the last section is also unknown.

¶ 5     Following a public hearing on July 27, 2015, Shane Brandt (Brandt), the Liberty Township highway commissioner, found that plaintiff's petition was "not in the future public and economic interest of Liberty Township" and denied the petition. Plaintiffs appealed the decision, and a public hearing was held before Greg Koester (Koester), the Effingham County highway commissioner,

---

[1]It was alleged that Devore filed a petition to vacate a portion of North 200th Street. It was undisputed that Devore approved the petition to vacate on October 3, 1994, when he was Liberty Township highway commissioner. It was also undisputed that, as the property owner on both sides of the road, the vacated road reverted to Devore as owner. See 605 ILCS 5/9-127(a) (West 1994). Although not raised as an issue, we would be remiss in allowing anyone to perceive this action as proper. See *People ex rel. Russell v. Commissioners of Highways of Town of Johnson*, 240 Ill. 399, 407-08 (1909).

2

on December 16, 2015. At the vacation hearing, plaintiffs testified that the portion of the road requested by Archer had long been abandoned by Liberty Township. Testimony revealed that North 200th Street was originally a cow path that was later used by covered wagons. The road ran north and south between County Road 1800th Avenue and State Highway 33 and contained a bridge that crossed over Wolf Creek. The bridge washed out long ago and was never replaced.

¶ 6    Testimony at the vacation hearing also revealed there were two other roads, one on each side of North 200th Street, that ran north and south. The alternative routes were known as 100th Street, which was the main street going through Beecher City, and 300th Street, also known as Altamont Road, that went to Holland. No testimony regarding when these roads were built, the character, access, width, material, or traffic on these roads was provided. These roads were approximately one mile east and west of North 200th Street. The testimony did reveal that Archer's portion of North 200th Street had never been maintained by the Township. It was a dirt road that was torn up by Devore's farm machinery and could no longer be traveled via a passenger car, requiring Archer and Kristy to use Hallmark's driveway to access their properties. Without the access provided by Hallmark, who is Archer's ex-husband and Kristy's dad, Archer and Kristy would have to park their cars and take a tractor to get to their properties. Although Kristy put in a driveway to the road in 2006 and Archer requested the Township fix the road for 20 years, no work was ever done. The Township advised Archer it would take five years to fix the road because it had no money and was unwilling to work on the road while the lawsuit was pending because they did not want to waste the money. The Township was also unwilling to post signs on the road setting a weight limit to avoid further damage from heavy farm equipment using the road.

¶ 7    Blaine Hallmark (Blaine) testified that beyond his dad's (Hallmark) driveway was an impassable dirt road. If he invited friends over, he would warn them not to pass the mailboxes or

3

he would have to get the tractor to pull out their stuck vehicle. They used to ride ATVs or go horseback riding in the area, but Devore put up barbed wire to keep the four-wheelers out. Devore would also intentionally tear up the road when they tried to fix it by using differential braking and cocking his rear steering wheels on the combine. Devore would drag his rear wheels through the culvert that his sister Kristy constructed to get to her property as well. Blaine stated there was no way anyone could drive from Highway 33 down North 200th Street and get to 1800 Avenue unless they had a "severe off-road vehicle." He doubted that even a four-wheeler would make it. A passenger car had no chance of making it after the mailboxes. In its current state, Devore was the only one who could use the road. Blaine also stated that if his father sold the property and the new buyers would not allow use of the driveway, his sister and mother would have no access to their properties. Archer and Hallmark confirmed that Archer and Kristy could only access their properties by driving on Hallmark's personal property.

¶ 8     On December 23, 2015, Commissioner Koester upheld Commissioner Brandt's decision based "upon the future public and economic interest of Liberty Township." The order noted verbal commitments by Brandt "to improve said road in an effort to provide better access to [the] driveway for the residence of Kristy Hallmark," noting the township "may elect to extend said road in the future to [the] south to access 1800th Avenue."

¶ 9     Following the administrative denials, plaintiffs filed a two-count complaint. The first count requested a finding of abandonment, and the second count appealed Commissioner Koester's denial of the requested vacation. On February 1, 2018, the trial court, after hearing arguments related to the second count, found that Commissioner Brandt's decision was not clearly erroneous

4

and denied plaintiffs' relief stating the court's reasoning was recited on the record.[2] Following a failed attempt at mediation, on May 11, 2018, the trial court set count I for a final pretrial on April 22, 2019, and a jury trial on May 6, 2019.

¶ 10    On March 8, 2019, the Township filed a motion for summary judgment supported by the affidavit of Casey Poe (Poe). Poe is Devore's grandson. The motion contended that plaintiffs could not show either nonuse or a change in circumstances required to abandon the road. The Township relied on plaintiffs' allegation that Devore used the road as well as Poe's affidavit which stated he had used the road to access his grandfather's farmland for the last 15 years and further stated that other individuals used the road to access the farm to provide services for Poe related to the application of chemicals on Devore's farmland. The Township's motion further contended there had been no change in circumstances as there was no evidence that any other road served the same purpose as North 200th Street. This contention was based on the lack of an alternative road and claimed that no road existed that would allow the Devores to use their "tractors, implements, combines, wagons, pickup trucks and grain trucks" to access their family farmland.

¶ 11    Plaintiffs filed a response supported by Archer's affidavit claiming that originally North 200th Street was a "through roadway" connecting two other public highways: Illinois State Highway 33 and County Road 1800th Avenue. Archer stated that after Devore granted his own petition to vacate a portion of North 200th Street in 1994, the vacated portion reverted to Devore and the public no longer had use of the road. Archer's affidavit also stated that the portion of the road that was at issue ran by Archer's real property and was essentially a dirt road, overgrown with trees and branches and impractical for use by the public other than by ATV or farm equipment.

---

[2]The transcript from the February 1, 2018, hearing was not included in the record; however the transcript is unnecessary as plaintiff did not appeal the trial court's decision on count II.

Archer did not dispute that some of Devore's agents used the road to access fields but contended access was available for Devore and his agents via Highway 33 as well as through Devore's property. Archer also disputed Poe's statements regarding the elevation of the entrance at Highway 33, claimed there was a dirt ramp that eased vehicles off Highway 33 into the Devore farmland, and stated that she knew this access was available because she had seen Devore's agents access the property from that location.

¶ 12    A hearing was held on April 17, 2019. Following arguments, the trial court noted the two requirements for abandonment: nonuse and either a showing that the public acquired the legal right to another road or where the necessity for another road has ceased to exist. Regarding the former requirement, the court noted Devore and his agents' use of the road and found that "[a]ny use is use by the public." Thereafter, the trial court found the first requirement could not be met and stated, for that reason alone, the motion for summary judgment must be granted. Despite this statement, the trial court also addressed the second requirement and found plaintiffs "have also not demonstrated in any way that they have any evidence that the public has acquired legal right to another road," and were relying on whether "the necessity for another road has ceased to exist." The court found the latter argument failed because the

"only possible interpretation of the necessity for another road ceasing to exist relies upon access over private property. And Plaintiffs argue that well, Mr. Devore now can do that because he owns that property, but this is a bigger picture than the snapshot that's being taken at this moment in time. Liberty Township has an interest in providing public access to this property. Not access across somebody else's private property to get there and these parcels of property which are strung together now might not always be strung together. Might not always be owned by the same person. And no one else in the public would be

allowed that type of access across what is now Mr. Devore's property to get wherever they want to go so it wouldn't be public access. It would be purely private access. The Plaintiffs seem to want to argue that Mr. Devore doesn't need this road anymore and therefore, it is abandoned. And that even if it were true at the present time is not enough to meet the requirements for a common law abandonment of a public road."

¶ 13 A final judgment order was entered on May 1, 2019, and on May 30, 2019, Janet Archer appealed the trial court's April 17, 2019, and May 1, 2019, orders.

¶ 14                                     II. ANALYSIS

¶ 15 "A road is a public necessity, and is indispensable to public convenience." *Taylor v. Pearce*, 179 Ill. 145, 149 (1899). "Once established, a public highway does not lose its character as a public road unless it is either vacated by the authorities *** or abandoned." *Hart v. Town of Shafter*, 348 Ill. App. 3d 713, 715 (2004). To establish abandonment of a public highway, nonuse by the public alone is insufficient. *Chamness v. Mays*, 2014 IL App (5th) 130381, ¶ 30. In addition to nonuse, the party must also establish that "the public has acquired the legal right to another road or where the necessity for another road has ceased to exist." *Hart*, 348 Ill. App. 3d at 715-16 (citing *Chicago & Eastern Illinois Ry. Co. v. Road District No. 10*, 353 Ill. 160, 165 (1933), and *Yaste v. Rust*, 169 Ill. App. 3d 800, 803 (1988)). Regarding the latter requirement, "some circumstance must change in order to cause the presumed necessity for the road to *cease* to exist." (Emphasis in original.) *Id.* at 716-17. This requirement ensures that the long-standing principle requiring something more than mere nonuse of the road is not eviscerated. *Id.* at 717.

¶ 16 We review the trial court's entry of summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15. A motion for summary judgment is properly granted only where the pleadings, depositions, admissions, and affidavits establish that no genuine issue

7

of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). "Because summary judgment is a drastic means of disposing of litigation, it should be denied and the issue decided by the trier of fact 'where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact.' " *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 19 (quoting *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113-14 (1995)). For purposes of summary judgment, "material facts" are those "that might affect the outcome of the case under the applicable substantive law." *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 38.

¶ 17    The Township's motion for summary judgment contended plaintiffs could not show "nonuse" because Devore, his grandson Casey Poe, and the suppliers for Devore's farmland all continued to traverse the road. In response, plaintiffs conceded Devore's use and on appeal Archer contends that Devore and his agents' use of the road for farming was insufficient to show "use" by the public based on *Brockhausen v. Boehland*, 137 Ill. 547 (1891).

¶ 18    In *Brockhausen*, the highway commissioner sought to remove a bridge on a public highway that it claimed was abandoned. *Id.* at 548. The appellant was the owner of the 360-acre farm on which the public highway and bridge were found. Appellant contended that the bridge was the closest bridge that allowed him access to his dwelling, barn, stables, and outhouses. The farmer stated that he, his family, and servants all used the bridge daily. *Id.* The commissioner stated that neither the highway nor the bridge was properly maintained, and that a new road and bridge had been built for the public. *Id.* at 548-49. The commissioner also stated that the public entirely

8

abandoned the old road and bridge after the new highway and bridge were built, that the old road and bridge were "unfit for use" and "unsafe" and there were no funds to repair them. *Id.* In response, the farmer stated he would have to travel a greater distance to cross the water and would be inconvenienced and damaged by removal of the bridge in question. *Id.* He further stated the bridge was not in an unsafe condition and could be placed in good repair for a small sum of money. *Id.* On review, the supreme court stated, "[e]nough will appear from the foregoing statement of facts to show that the bridge in question and that part of the old line of travel with which it was connected has been wholly abandoned by the public." *Id.* at 551. "Under the facts of this case and these decisions there can be no question that what is here termed the 'old road' had ceased to be a public highway." *Id.* at 552. Such statement subsumes both the requirement of nonuse as well as the requirement that the public acquired the legal right to another road.

¶ 19　　In the decades since *Brockhausen* was issued, the decision has never been questioned or overruled, and in *Hart*, 348 Ill. App. 3d at 716, this court recognized a similarity of facts when determining whether a road was unused. In *Hart*, this court noted:

> "In the instant case, there is no question that the road has not been used for a period
> of time sufficient to establish abandonment. The bridge was missing by 1935, making it
> impossible to ford the creek and therefore impossible to use Road 100 E as a through road.
> Trees and brush grew up in the roadway, making it completely impassable even for traffic
> wishing to drive a part of the way up the road without crossing the creek. The parties agreed
> that there was no evidence of any use of the road other than by the owners of private
> property abutting the road after Joe Vittitow cleared some of the trees and brush from it.
> See *Brockhausen v. Boehland*, 137 Ill. 547, 548-49, 27 N.E. 458, 459 (1891) (where the

9

supreme court held that a road had been abandoned even though the farmer whose land it traversed used it daily).” *Id.*

¶ 20    Considering the pleadings and affidavits in a light most favorable to the plaintiff, in conjunction with the facts and holdings in *Brockhausen* and *Hart*, we cannot say, as a matter of law, that Devore and his agents’ personal use of North 200th Street to access Devore’s farmland, via “tractors, implements, combines, wagons, pickup trucks, and grain trucks,” is “public use.” Just as in *Hart*, the road at issue in the current case is impossible to use as a through road. In addition to the washed away or dilapidated bridges seen in *Hart*, *Brockhousen*, and the case at bar, we also have a portion of the road that was vacated in 1994, and the portion at issue cannot be traversed by a passenger car, rendering the road “impassable even for traffic wishing to drive a part of the way up the road without crossing the creek.” *Id*. Further, just as in *Brockhousen* and *Hart*, there is “no evidence of any use of the road other than by the owners of private property abutting the road.” Here, it is undisputed that the owners of the private property abutting the road at issue were Archer, who owned the property east and west of the disputed road, and Devore, who owned the property south of the disputed portion of road. We cannot reconcile the trial court’s finding that “[a]ny use is use by the public” with the findings of “nonuse” previously established in *Brockhausen* and *Hart* and decline to affirm a finding that would require us to ignore this binding precedent.

¶ 21    In the light of *Brockhausen* and *Hart*, we find there remains a question of fact as to whether the “use” described by the Township is “use” by the general public or is use by abutting property owners. We also note that the parties disputed how often the road was used. The Township’s motion for summary judgment alleged weekly use by Poe and Devore’s agents; however, Archer’s affidavit disputes the frequency listed therein. Further, due to the trial court’s finding of use, no

10

analysis was provided as to whether, if nonuse was found, the length of time for nonuse was sufficient. See *id*. Accordingly, we find the trial court erred in determining there was no genuine issue of material fact regarding "nonuse."

¶ 22     In addition to nonuse, "abandonment will be found only where the public acquired the legal right to another road or where the necessity for another road has ceased to exist." *Id.* at 715-16. "[A]cceptance of a preexisting alternate route can suffice to demonstrate abandonment—at least in certain circumstances." *Id*. at 716. Here, the trial court's findings only address the necessity for an alternate road. These findings were based solely on the public's unknown future necessity for the road, not the current use of the road, despite no evidence being submitted to the trial court that indicated Devore intended to sell either his personal residence or his adjoining farmland at any time in the future. "A decision cannot be based on guess, speculation, or conjecture." *Chamness*, 2014 IL App (5th) 130381, ¶ 28.

¶ 23     The Township contends that there "is simply no evidence that any change has occurred with regard to the right of use of another road or the necessity of North 200th Street." Such contention is not well taken as it ignores the admitted fact that after 1994, when Devore vacated a portion of the road, the general public could no longer use North 200th Street as a through road to reach either Highway 33 or 1800th Avenue. The contention also ignores the fact that after Devore vacated his portion of the road, the motor fuel tax was no longer collected, the Township stopped maintaining the road, and neither Archer, nor any member of the general public, could access Archer's property unless they did so via farm machinery. The Township's contention is further undermined by the statute defining a highway as

> "any public way for vehicular travel which has been laid out in pursuance of any law of
> this State, or of the Territory of Illinois, or which has been established by dedication, or

11

used by the public as a highway for 15 years, or which has been or may be laid out and connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use under such dedication by such owners, *and which has not been vacated in pursuance of law*." (Emphasis added.) 605 ILCS 5/2-202 (West 2018).

¶ 24 The Township also argues that there is no evidence of another road that serves the same purpose as the disputed portion of North 200th Street; however, neither the Township's motion, nor its argument, provide or address the original purpose of the road. Instead, the Township's argument is based on the "current purpose" of the road, which is limited solely to Devore and his agents accessing Devore's farmland and a "future potential purpose" of the general public in the event Devore sells or allows his farmland to be developed for residential use in the future. As noted above, the trial court's decision was based solely on the latter. As the future purpose is purely speculative, and the original purpose was not provided, we address only the current purpose.

¶ 25 Review of the pleadings reveals that the current (and sole) purpose is to provide access to Devore and his agents to Devore's farmland. The Township claims Devore and his agents have no other legal access apart from North 200th Street. This contention was supported by Poe's affidavit which claimed that each of Devore's four farm fields "is mostly surrounded by wooded areas that prevent access for vehicles except at certain points." While acknowledging Poe's affidavit, we note that nothing in the affidavit, or the attached map, provided any detail as to where those "certain points" of access existed. As such, it would not be possible for the trial court to determine whether those "certain points" provided sufficient access to render the necessity of an alternative road to cease. Further, Archer's responsive pleadings revealed two potential access points that did not encompass the portion of the road at issue. At no point did the trial court address the missing

12

information or the parties' competing arguments. As there remain material questions of fact as to whether Devore currently has alternate access to his farmland, or has accessed his farmland from an alternate route, summary judgment cannot be affirmed.

¶ 26 We also note the cases cited by the Township that declined to find a road was abandoned. See *Hart*, 348 Ill. App. 3d 713 (declining to find abandonment despite another road being located one-half mile to the east), and *Chamness*, 2014 IL App (5th) 130381 (declining to find abandonment where no legal right access the property was available). We find those decisions distinguishable.

¶ 27 In addition to claiming that alternative roads were available, in both *Hart* and *Chamness*, the appellants claimed the road was no longer necessary and the courts required the parties to show something "more" than nonuse to meet their burdens of proof. *Hart*, 348 Ill. App. 3d at 716-17 ("some circumstance must change in order to cause the presumed necessity for the road to *cease to exist*" (emphasis in original)); *Chamness*, 2014 IL App (5th) 130381, ¶ 30. Unlike *Hart* and *Chamness*, in which nothing more was established, here, something "more" exists. Plaintiffs alleged, and the Township admitted, that Devore vacated 1018.88 feet of the road in 1994. If the original purpose for the public's use of the road was based on the availability of a through road to reach either Highway 33 or 1800th Avenue, the purpose was extinguished, as a matter of law, when Devore granted the petition to vacate a portion of North 200th Street.

¶ 28 Therefore, whether the necessity for another road ceased to exist must be considered in conjunction with the change in circumstances stemming from Devore's vacation of a portion of the road. An established "public highway does not lose its character as a public road unless it is either vacated *** or abandoned." *Hart*, 348 Ill. App. 3d at 715. Here, a portion of the established public highway was vacated. As such, its character as a public road remains a question of fact and,

on remand, the trial court must also consider whether the necessity for another road ceased to exist due to Devore's vacation of the road.

¶ 29    "The function of the summary judgment procedure is to determine the existence or absence of triable issues of fact, not to try them." *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 312 (1994). Where factual questions regarding material issues exist, summary judgment is inappropriate. *Id.* As such, we vacate the trial court's finding that "[a]ny use is use by the public" and remand the case back to the trial court to determine the frequency of Devore and his agents' use of a dirt road and further determine whether Devore and his agents' use of the road with farm machinery on a road rendered impassable in a passenger car due to the farm machinery is "public use" under the binding precedent set forth herein. If it is not public use, the trial court must also determine if the nonuse was of sufficient duration for purposes of abandonment. See *Hart*, 348 Ill. App. 3d at 716. If nonuse is found, the trial court must also address the competing arguments regarding accessibility, as well as what effect on the character of the road, if any, was caused by Devore's vacation of the road. Therefore, we reverse the trial court's summary judgment order and remand the case to the trial court to consider the material questions of fact addressed herein.

¶ 30                             III. CONCLUSION

¶ 31    For the foregoing reasons, we reverse the trial court's summary judgment order and remand for further proceedings.


¶ 32    Reversed and remanded.