THE HIGHWAY COMMISSIONERS OF THE TOWN OF LANES-
VILLE, Plaintiffs in Error, *vs.* MARTHA KINAHAN,
Exrx., *et al.* Defendants in Error.

*Opinion filed June 16, 1909.*

1. HIGHWAYS—*party relying upon abandonment of a highway must make clear proof.* A public highway, legally established, continues to be a highway unless the public has abandoned its right, and one who claims such right has been lost has the burden of showing, by clear and satisfactory evidence, an actual non-user under circumstances clearly indicating an intention to surrender and abandon the right.

2. SAME—*when abandonment of a highway may be presumed.* If the public has ceased to travel a road and has acquired another which accommodates public travel, an abandonment of the first road may be fairly presumed.

3. SAME—*decision of highway authorities as to the relative advantages of two adjoining roads is sufficient.* Where a strip of land adjoining a legally established highway is thrown open by the owner to the public, the public authorities in charge of highways have authority to decide upon the relative advantages of the two roads, and if they believe the new road is preferable and adopt and improve it as a public highway, their decision is sufficient.

4. SAME—*when an old highway will be regarded as abandoned.* Where a highway has ceased to be used and another is acquired in its place with the consent and approval of the public authorities, and the use of the original highway has ceased for a sufficient length of time to clearly indicate an acceptance by the public of the new highway, the original highway will be regarded as abandoned.

5. INJUNCTION—*when construction of building in old highway will not be enjoined.* Construction of a building on land originally a legally established highway will not be enjoined where the proof shows that the public has for more than twenty years ceased to travel such highway, and has used in its place an adjoining strip of land dedicated by the owner to the public and improved and accepted by the highway authorities as a substitute for the original highway, which has for many years been obstructed by buildings without protest by the public or the public authorities.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

HAMLIN, GILLESPIE & FITZGERALD, for plaintiffs in error:

A public highway continues until it is clearly and unmistakably abandoned. When an abandonment is relied upon it must be clearly and satisfactorily proven that all use of it as a public road has ceased for a sufficient length of time clearly to indicate the intention. A transient or partial non-user is not sufficient. Mere intermission is not interruption. *Cox* v. *Highway Comrs.* 194 Ill. 360; *Lewiston* v. *Proctor,* 27 id. 414; *Madison* v. *Gallagher,* 159 id. 105; *Galbraith* v. *Litticch,* 73 id. 209.

In order to show an abandonment by the public of a portion of a public street there must be not only an apparent abandonment by the public, but an intention to abandon must also be proven by clear and satisfactory evidence. *Martin* v. *People,* 13 Ill. 344; *Shirk* v. *Chicago,* 195 id. 298; *Gentleman* v. *Soule,* 32 id. 278; *Lewiston* v. *Proctor,* 27 id. 418; *DeKalb* v. *Luney,* 193 id. 185; *Horcy* v. *Haverstraw,* 124 N. Y. 275; Elliott on Roads and Bridges, sec. 972.

Two things must be shown before there can be said to be an abandonment of a public highway: (1) A new and legal road to answer the same purposes; and (2) the complete abandonment of the old road. *Grube* v. *Nichols,* 36 Ill. 99; *Champlin* v. *Morgan,* 20 id. 181; *Taylor* v. *Pearce,* 179 id. 149.

No act or acts of abandonment of the highway by those in authority in the governing body of the municipality, no matter though expressly made and declared, could operate to create the estoppel, for it is not within the lawful exercise of the power of such authorities to abandon the streets which they hold for the use of the public, so that by the mere act of abandonment the rights of the public therein may be lost. *DeKalb* v. *Luney,* 193 Ill. 185; *Shirk* v. *Chicago,* 195 id. 298.

In order to establish a road by prescription it is necessary to show that the travel has been over precisely the same strip of land continuously for the statutory period. *Owens* v. *Crossett,* 105 Ill. 360; *Gentleman* v. *Soule,* 32 id. 278; *O'Connell* v. *Railway Co.* 184 id. 308.

Where the public is forced to go around an obstruction placed in a highway, this is not such abandonment as is contemplated where the public ceases to voluntarily use the highway. An abandonment must be voluntary. *Martin* v. *People,* 13 Ill. 344; *Gentleman* v. *Soule,* 32 id. 278.

Before the public can be presumed to have abandoned a public highway by non-user it must be shown that another line has been established in place of it, where a legal right exists to use the new road. *Champlin* v. *Morgan,* 20 Ill. 181; *Grube* v. *Nichols,* 36 id. 98.

CONKLING & IRWIN, for defendants in error Lee Metcalf and Martha Kinahan:

The public loses its right to a highway where it has abandoned it and accepted another in its stead for such a length of time and under such circumstances as to give it a title to the substituted road. *Champlin* v. *Morgan,* 20 Ill. 181; *Taylor* v. *Pearce,* 179 id. 149; *Lewiston* v. *Proctor,* 27 id. 413; *Peoria* v. *Johnston,* 56 id. 45.

Abandonment and non-user of a road for twenty years afford a presumption of extinguishment, and where there has been some act done by the owner of the land charged with the easement, inconsistent with or adverse to the right, an extinguishment will be presumed. 3 Kent's Com. 448; *Peoria* v. *Johnston,* 56 Ill. 45; *Auburn* v. *Goodwin,* 128 id. 57; *Jordan* v. *Chenoa,* 166 id. 530; *Carlinville* v. *Castle,* 177 id. 105; *People* v. *Rock Island,* 215 id. 488; *Nelson* v. *Randolph,* 222 id. 531.

The abandonment of a road is not a question of the time of non-user, but is simply a question of fact, to be established like any other question of fact in the case. *Holt*

v. *Sargent,* 15 Gray, 97; *Brockhausen* v. *Boland,* 137 Ill. 547; *Lathrop* v. *Railroad Co.* 69 Iowa, 105.

McANULTY & ALLEN, (J. L. MINNIS, of counsel,) for defendant in error the Wabash Railway Company:

Abandonment by the public of its highway is complete when the proof establishes that the public has acquired the legal right to another road which serves the substantial purposes of the public. *Champlin* v. *Morgan,* 20 Ill. 181; *Galbraith* v. *Littiech,* 73 id. 209; *Grube* v. *Nichols,* 36 id. 92; *Supervisors* v. *People,* 116 id. 461.

Dedication of land to the public highway may be presumed from the acts of the parties indicating an intention to dedicate, coupled with uninterrupted user by the public for even less than twenty years and proven by parol. *Coal Co.* v. *Challis,* 200 Ill. 228; *McIntyre* v. *Storey,* 80 id. 27; *Wormley* v. *Wormley,* 207 id. 417; *Smith* v. *Flora,* 64 id. 93; *Thompson* v. *Maloney,* 199 id. 284; *Clark* v. *McCormick,* 174 id. 170; *Chicago* v. *Wright,* 69 id. 319; *Louk* v. *Woods,* 15 id. 257.

Where the public have long withheld the assertion of control over highways, and private parties have been, by the acts of those representing the public, induced to believe the street abandoned by the public, and on the faith of that belief and with the acquiescence of those representing the public have placed themselves, by making structures and improvements in the highway, in a situation where they must suffer pecuniary loss if those representing the public be allowed afterward to allege that the street was not abandoned, the doctrine of equitable estoppel may be applied. *Lee* v. *Mound Station,* 118 Ill. 304; *Railroad Co.* v. *Joliet,* 79 id. 26; *Shirk* v. *Chicago,* 195 id. 298; *Sullivan* v. *Tichenor,* 179 id. 97; *Chicago* v. *Sawyer,* 166 id. 290; *DeKalb* v. *Luney,* 193 id. 190; *Jordan* v. *Chenoa,* 166 id. 530; *Lee* v. *Harris,* 206 id. 429; *Peoria* v. *Bank,* 224 id. 43.

More pronounced acts on the part of the public should be required before the conclusion is reached that the public has acquired rights to premises near to a railway depot and freight yards than might be required under other circumstances. *Peotone* v. *Railroad Co.* 224 Ill. 110.

Mr. Justice Cartwright delivered the opinion of the court:

The highway commissioners of the town of Lanesville, in Sangamon county, filed their bill of complaint in the circuit court of said county praying for an injunction restraining Lee Metcalf and William P. Kinahan from constructing a grain elevator on a strip of land 58½ feet wide north and south and 150 feet long east and west, adjoining the right of way of the Wabash Railway Company on the south, at the station of Lanesville, alleging that the strip of land was part of a public highway. Metcalf and Kinahan claimed the right to erect the elevator by virtue of a lease from the railway company, which was also made a defendant. William P. Kinahan having died, Martha Kinahan, executrix of his will, was made a defendant. Lee Metcalf and Martha Kinahan answered jointly, denying the existence of a highway at the place the proposed elevator was to be erected, and alleging that the highway which had formerly existed at that place had been abandoned and the public right lost by non-user, and that the public had acquired another highway adjoining it on the south, which had been accepted and used as a substitute for the abandoned highway for more than twenty years. The railway company answered separately, alleging the abandonment of the highway as originally laid out and the acquiring of another in its stead, and claimed title to the strip of land under a deed from the owner of the farm over which the former highway was laid. The issue was tried before the chancellor, who entered a decree finding that the north fifty

feet of the highway within which the strip of land was located had been lost to the public by abandonment and non-user; that in place of the abandoned portion the public had obtained a new highway by dedication and acceptance and also by prescription, and that in place of the original highway there is now a legal highway of the width of more than sixty feet, including the south ten feet of the original highway. The defendants were enjoined from encroaching on the part of the highway not abandoned. The record has been brought to this court for review in return to a writ of error.

In the year 1859 a public highway of the width of sixty feet, running east and west through the town of Lanesville and adjoining on the south the right of way of a railroad now owned by the Wabash Railway Company, was legally established by proceedings in the county court of Sangamon county. As early as 1862 the highway was open and was in use by the public for highway purposes. There was a station called Lanesville at the place in question, and there are now at the station two or three dwelling houses, two stores and a post-office. For many years the station was a small flag station, and there were no conveniences for shipping stock or grain from the place until 1874. The first store was built at the station in 1868, a short distance south of the highway. The land on which the highway was laid out at the station was a part of the farm of Jesse A. Pickrell, and in the year 1874 he made a deed to the company then owning the railroad right of way, of a tract of land including the strip in dispute, which lies adjoining the right of way on the south and running east from the center line of a highway coming from the south and intersecting the original highway. About that time, in 1874, the railway company built its stock yards, one hundred and five feet long east and west, on the east part of the tract in dispute and extending entirely across and beyond the limits of the highway, so as to effectually obstruct the whole

highway and stop the use of it at that place.  Pickrell, who owned the land lying south, had left open, at some time before that which is not definitely shown, a strip of land south of the highway and had set his fence back to the line of the store above mentioned and perhaps another store then fronting on the strip.  About the time the stock yards were built, in 1874, J. W. Pierce built a blacksmith shop twenty-four feet square in the highway and extending about forty-three feet south of the right of way and forty or fifty feet west of the stock yards.  The deed from Pickrell is the only apparent authority for the railway company occupying the public highway, and the travel then went around the stock yards on the strip which Pickrell had thrown open.  In 1877 E. R. Ulrich built a grain elevator east of the stock yards, encroaching upon the original highway about fifty-five feet and occupying all of the highway but the south five feet.  That elevator has been there ever since and is now there.  Ulrich also built a corn-crib above the stock yards, thirty-eight feet wide, in the public highway.  The stock yards remained at the same place until the year 1888, when they were removed to a point west of the strip of land in dispute, and about that time an elevator was constructed by Ford & Smith immediately west of the disputed tract, which occupied twenty-eight feet of the public highway, and forty-two feet of the highway was used by Ford & Smith in connection with the elevator.  The blacksmith shop was moved away in 1889 or 1890.  In 1904 an interurban railway was built through the town of Lanesville and the highway commissioners gave permission to cross any public highways.  Under that permission the track was laid in the open land thrown out by Pickrell south of the original highway.  The Ford & Smith elevator passed to Ford & Metcalf and was destroyed by fire in the year 1907, and Metcalf and Kinahan planned to build the new elevator on the tract in dispute.  After the elevators were built the elevator people put up a hitch-rack in the

open ground, perhaps fifty feet long, and people who came to the station hitched their teams on both sides of it. The elevator people also cut the weeds on the ground and filled up places that washed out. The proposed elevator will extend south of the right of way and over the original highway forty-two feet and six inches.

It is clear that Pickrell dedicated the strip of land south of the original highway for public purposes, but there was no evidence of any declaration what his specific purpose was, and the plaintiffs in error contend that the land was thrown out to the public as a common and not as a highway. We find no evidence on which to base a presumption of that kind, and the land was accepted and used by the public as a highway, and improved as such, without objection on the part of Pickrell. The natural inference is that his purpose was to dedicate the land for a public highway. The land has not only been used, ever since it was thrown open, as a public highway, but it has been graded and improved by the highway commissioners and a sidewalk has been built and re-built by them along the south side of it on the line of the stores. The highway commissioners also dug a well in that strip of land for the purpose of watering horses and for the public use, and there is no reasonable doubt of the fact that the public acquired that land for a public highway by dedication and acceptance and also by continuous use under a claim of right for more than twenty years. After the original highway was obstructed the public necessarily ceased to use the obstructed portion of it as a highway, and no objection was made, either by the highway commissioners or anyone else, to the occupation of the highway in the manner described. The evidence was conflicting as to whether the commissioners ever did any work on the part of the old highway which was not obstructed, some of the witnesses who had held offices as highway commissioners saying that they did not and did not regard the land as a highway, while the recollection of other for-

mer commissioners was that they did some work on it. There was much evidence that the main travel went south of where the interurban track is laid, and some evidence that part of the travel went over the strip in dispute after the stock yards were removed.

The ground in dispute was originally a public highway and it continued to be such, and the public right was not lost unless it was abandoned. The burden was upon the defendants to prove an abandonment by clear and satisfactory evidence, and to do that it was necessary to prove an actual non-user under circumstances clearly indicating an intention to surrender and abandon the public right. (*Cox* v. *Commissioners of Highways,* 194 Ill. 355.) The defendants asserted that a new highway had been lawfully acquired answering the same purposes as the original one, and that the public and the public officials had accepted the new road and completely abandoned the old one. If the public has ceased to travel a road and acquired another which accommodates the public travel, an abandonment of the first road may fairly be presumed. The public authorities having charge of the highways are invested with the right to decide between the relative advantages of the two roads, and if they believe the one substituted for the other is preferable and adopt and improve the substituted road as the public highway, their decision is sufficient. (*Grube* v. *Nichols,* 36 Ill. 92.) Where a highway has ceased to be used and another is acquired in its place with the consent and approval of the public authorities, and the use of the original highway has ceased for a sufficient length of time to clearly indicate an acceptance by the public of the new highway, the old one will be regarded as abandoned. (*Galbraith* v. *Littiech,* 73 Ill. 209; *Champlin* v. *Morgan,* 20 id. 181; *Town of Lewiston* v. *Proctor,* 27 id. 414; *City of Peoria* v. *Johnston,* 56 id. 45; Elliott on Roads and Streets, sec. 873.) In this case the public acquired the new road, which accommodated the public as well as the original road,

and it was accepted and improved as a highway by the public authorities, and no protest or objection was ever made to the occupation of the original highway by the stock yards, blacksmith shop and the elevators. The finding of the chancellor that the north fifty feet of the highway ceased to be used by the public and was abandoned is well supported by the evidence in the record, and we can not say that the conclusion reached on that subject was incorrect.

The decree is affirmed.

*Decree affirmed.*