(No. 21911.—

THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY,
Appellant, *vs.* ROAD DISTRICT No. 10, Appellee.

*Opinion filed June 22, 1933—Rehearing denied October 6, 1933.*

Thomas N. Cook, (K. L. Richmond, and John F. Connors, of counsel,) for appellant.

Doris Rumsey, and H. A. Evans, for appellee.

Mr. Justice Stone delivered the opinion of the court:

Appellant filed with the Illinois Commerce Commission on March 17, 1932, its petition seeking permission to discontinue a certain grade crossing over its tracks in Johnson county. The petition recites that appellant owns and operates a line of railroad from Chicago to Thebes, in Alexander county, passing through Johnson county; "that a certain public highway crossing your petitioner's railroad at grade, located on the township line between townships 13 and 14 south, range 2 east, in Johnson county, is no longer used as a public highway and the crossing abandoned, substantially as shown" on a blue-print attached to the peti-

tion. The petition sought an order of the commission permitting petitioner to discontinue the maintenance of that grade crossing. Certain residents and property owners of road district No. 10 in Johnson county filed with the Commerce Commission a cross-petition objecting to the relief sought by the petition. A hearing was had and evidence taken on April 6, 1932, and an order entered by the commission granting the prayer of the petition. Thereafter, on petition therefor, a rehearing was allowed and further hearing of evidence had on June 6, 1932. Thereafter the commission re-entered its order granting the prayer of the petition and permitting appellant to remove the crossing in question upon improvement by it of two certain crossings on its main and branch lines at points about one-half mile south from the crossing here involved. It appears that the crossing sought to be abolished, known in this record as the "Joppa Junction crossing," is a grade crossing forming a part of an east and west highway and crosses at a point a few feet south from the wye at which the Joppa branch leaves the main branch. At that point the two tracks are quite close together. This highway is about three and one-half miles in length and connects the village of Perks, west of the said road, with Belknap, another village in Johnson county lying east of appellant's road. At the time of the hearing State route No. 147, a hard road extending north and south, was being laid about one-half mile east of the railroad, at Joppa Junction. A small settlement, known as Chappel Community, lies about three-quarters of a mile west of Joppa Junction, at the intersection of the road here involved and the Perks road, a north and south highway. This settlement contains a store and a church. A cemetery is located near by. On the east end of this Joppa Junction road is a small settlement known as West Eden. Another east and west road one and three-quarters miles north of Joppa Junction connects the Perks road on the west with the new hard road on

the east, and one-half mile south of Joppa Junction an east and west road has been laid out extending from the Perks road to the new hard road. This latter road crosses the main and branch lines of appellant's road, and, though it does not appear to have been completely dedicated and accepted as a public highway so as to require maintenance by appellant of statutory crossings, it is used to a considerable extent by the public.

It is conceded that for more than fifty years the Joppa Junction road has been in use as a public highway but that for the last five or six years it has been allowed to deteriorate, and either because of the opening of the road one-half mile south or because the Joppa Junction road has not been kept in repair the use of it has fallen off, until at the time of the hearing it was not used to any great extent by the public.

The commission finds (paragraph C) "that at a point a few feet south of the junction of said Joppa branch with petitioner's main line a certain east and west public highway crosses both said lines of railroad at grade." It also finds (paragraph G) "that neither the said Joppa Junction crossing nor the highway for some distance each way therefrom have been used to any great extent in recent years, and the said highway, through disuse or otherwise, has been allowed to deteriorate." It also finds (paragraph H) "that since the said Joppa Junction crossing and the highway each side thereof have been permitted to deteriorate, the crossings of the main line and the Joppa branch, formed by the east and west highway one-half mile south thereof, have been used to a considerable extent by the general public." It also finds (paragraph I) "that the closing and abolition of the Joppa Junction crossing will not seriously inconvenience the public in traveling from the territory immediately west of said crossing either to Cypress or Karnak; that the public necessity and convenience to be served by the said crossing is not sufficient to

offset the danger inherent in a grade crossing, and that in the interest of public safety the said crossing should be abolished and closed, but only after performance by the petitioner of the conditions set forth in the next following finding." These conditions are, that the appellant take steps, by dedication or otherwise, to remove any possible doubt as to the public nature of the road crossing its main line and Joppa branch one-half mile south of the Joppa Junction road and to maintain lawful crossings at those points. The commission ordered the crossing abolished on these conditions and ordered that "the said crossing may then be closed to public travel by said railroad company." On appeal to the circuit court of Johnson county this order of the Commerce Commission was reversed and set aside.

Appellant argues that the Joppa Junction road is shown to have been abandoned and that the new road one-half mile south of it has been accepted by the public, and that the Joppa Junction road has therefore ceased to exist as a public highway and the commission had jurisdiction to abolish the grade crossing. It is also argued that the issue concerning the abandonment of the Joppa Junction road was one of fact within the province of the commission to decide, and that its findings on that issue will not be disturbed unless clearly and manifestly against the weight of the evidence.

Appellant points to section 58 of the Public Utilities act as the source of the authority of the commission to abolish this crossing. Under that section the commission "may alter or abolish any grade crossing, heretofore or hereafter established, when in its opinion the public safety requires such alteration or abolition." It is not contended that this section empowers the commission to close an existing public highway by abolishing a railroad crossing on it, and, of course, it does not. The commission has no authority to abolish or vacate highways. It does have authority over railroad crossings in the public highways, (*Commerce Com.*

v. *Omphghent Township,* 326 Ill. 65,) but if a public high-
way exists at such crossing the power of the commission
is, and it must necesarily be, limited to the separation of
grades or re-location of a grade crossing at such point.

Appellee does not seriously contend that the commis-
sion does not have authority to abolish a grade crossing
where the public highway has been abandoned or legally
vacated, but its argument is that there is no substantial
evidence in the record upon which to base a finding of
abandonment or vacation of the highway. It is necessary
to a determination of the jurisdiction of the Commerce
Commission to abolish the crossing to consider whether the
Joppa Junction road has been, in fact, abandoned or vaca-
ted. The question thus raised is more than one of fact.
It is one of law and fact, to be measured and tested by the
rules of law laid down by this court or provided by the
statutes. The test of the existence of a public highway is
not limited to the use to which it is put nor the number
of people who travel upon it, but is, rather, based on the
right of all persons to use it as a road when they have
occasion to do so. (*Mudge* v. *Wagoner,* 320 Ill. 357;
*Rodgers* v. *Hess,* 325 id. 603.) "Once a highway always
a highway" is an ancient maxim of the common law.
(Elliott on Roads and Streets, (2d ed.) sec. 871.) This
maxim gives way, of course, to the rules of law concern-
ing the abandonment or vacation of a highway.

A public highway laid out and established as such by
the public authorities, or which has become a public high-
way by user, remains such until it is vacated by the public
authorities in the manner prescribed by the statutes, or is
abandoned by non-user on acquiring the legal right to an-
other road, or where the necessity for another road has
ceased to exist. (*Taylor* v. *Pearce,* 179 Ill. 145; *Brock-
hausen* v. *Bochland,* 137 id. 547; *Champlin* v. *Morgan,* 20
id. 181.) Mere non-user or adverse possession, alone, of
a highway cannot divest the public right therein nor divest

such highway of its public character, but where the public has ceased to travel a highway and another has, with consent of the public authorities, been acquired in its stead, and the use of the original highway has ceased for a length of time sufficient to clearly indicate an acceptance by the public of a new highway, the original highway will be regarded as having been abandoned. (*People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 269 Ill. 555; *Highway Comrs.* v. *Kinahan,* 240 id. 593.) Under this rule it may be clearly seen that it is only where there has been an abandonment or vacation of a highway in the manner prescribed by law that the Commerce Commission has power to abolish and dispose of a railroad grade crossing thereon.

In a case of this character the petition must be sufficiently broad to justify the relief sought, and the burden is on the petitioner to show, by a preponderance of the competent evidence, that it is entitled to such relief. (*Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 333 Ill. 215.) The petition in this case, as we have seen, seeks permission to discontinue the maintenance of the grade crossing on the ground that the highway which the petition states crosses its road at Joppa Junction, "is no longer used as a public highway and the crossing abandoned." It is not argued that this crossing is more dangerous than the ordinary grade crossing, and, in fact, the proof does not evidence that it is. The only ground upon which relief is sought is the abandonment of the Joppa Junction road as a public highway. As this court has frequently stated, it will examine the facts upon which the order and findings of the Commerce Commission are based, only to determine whether the order is within the scope of the authority of the commission and whether there is substantial evidence to support the findings. Unless it appears that its findings are contrary to the manifest weight of the evidence, courts will not interfere therewith. *Commerce*

*Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243; *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 id. 165; *Commerce Com.* v. *Omphghent Township, supra; Public Utilities Com.* v. *Smith,* 298 Ill. 151.

Testimony was taken, and while the witnesses differed as to the advisability of keeping this road open, no one testified that the use of the road had altogether ceased, except as to a short period during which adjoining land owners fenced and cultivated a portion of it. Such use by abutting land owners is not, of itself, sufficient to amount to an abandonment of the road. (*People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co. supra.*) It is clear that this highway has never been vacated by official act. The evidence shows that within twenty months next prior to the hearing herein four different petitions were filed by certain persons to have it declared vacated. The prayer of the petition was each time allowed by the highway commissioner but denied by the county superintendent of highways on appeal from the commissioner's action. The superintendent of highways testified that he reversed the holding of the highway commissioner because, on investigation, he was of the opinion that the road was being somewhat used, and that upon the opening of the Route 147 it would be of substantial benefit to the community lying west of the railroad.

There is a natural difference in the testimony of the witnesses as to the amount of travel over the road during the last five or six years and a difference in the opinions given as to why its use has fallen away, some witnesses testifying to only an occasional use of the road and all agreeing that the highway commissioner for the last five or six years had not repaired it, and that it had fallen into bad repair and was at places overgrown with weeds and brush. It would serve no useful purpose to set out this evidence in detail. There is no evidence of a complete cessation of

the use of this highway for a length of time sufficient to clearly show its abandonment under the test laid down in the cases cited. Since the road one-half mile south has been opened the Joppa Junction road has been little used. Whether that is because of an acceptance by the public of a new road or because the old highway was allowed to fall into disrepair is by no means clear. It is clear that the test of the rule has not been met. It may be further observed that a consideration of the findings of the Commerce Commission discloses no finding that this old highway has been abandoned. The finding of the commission is that for some distance on either side of the crossing the road has not been used to any great extent in recent years and the road has been allowed to deteriorate, and that the public necessity and convenience to be served by this highway are not sufficient to offset the danger of a grade crossing. This is not a finding of the jurisdictional fact that the highway has been abandoned. There is no finding of public acceptance of the east and west road laid out one-half mile south of Joppa Junction, and, as we have seen, the evidence does not clearly show such acceptance. It is clear from the testimony that appellant has never dedicated the crossings on the new road nor otherwise recognized its existence as a public highway. The record shows, without dispute, that there has been no vacation of the original highway by the authorities, but, on the other hand, such vacation was refused. We are of the opinion, therefore, that jurisdictional grounds of the order of the Commerce Commission abolishing this grade crossing do not appear in this record.

The order of the circuit court setting aside the order of the Commerce Commission is therefore right, and is affirmed.                                        *Order affirmed.*