Rule 23 order filed
 NO. 5-03-0237

April 12, 2004;

Motion to publish granted
 IN THE

May 13, 2004.  

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

CRAIG L. HART and CAROLYN J. HART, )  Appeal from the

)  Circuit Court of

Plaintiffs-Appellants, )  Fayette County.

and )

)

WALTER L. PEARSON, III, AMANDA )

PEARSON, and EILEEN M. PEARSON, )

)

Plaintiffs, )

v. )  No.  00-CH-10 

)

THE TOWN OF SHAFTER, DON STEWART, ) 

Individually, and DON STEWART as Road )

Commissioner of Shafter Township, )  Honorable 

)  John W. McGuire,

Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

In June 2000, Craig and Carolyn Hart (the plaintiffs) filed a complaint seeking to enjoin the defendants, the Town of Shafter and Shafter Township Road Commissioner Don Stewart, from entering onto their property to replace a bridge that once had been a part of a township road that ran through their property.  The defendants contend that the disputed strip of land remains a public road despite many years of nonuse, while the plaintiffs contend that the old township road has been abandoned by the public.  The plaintiffs appeal the trial court's order ruling that the road has not been abandoned.  We affirm.

I.  BACKGROUND

Although some specific testimony was in dispute, the parties stipulated to the most salient facts, which are as follows.  In 1908, Sharon Township acquired a road running north and south along the boundary between sections 19 and 20 in what is now Shafter Township.  The road, which is referred to as "Road 100 E", intersects at its southern end with Illinois State Route 185.  The part of Sharon Township in which it is situated later became Shafter Township.  

Portions of the road originally acquired in 1908 indisputably remain township roads.  The disputed portion of the road runs along the western boundary of what is now the plaintiffs' property.  Historical records show that the road included a bridge across a creek in 1925, although it is not clear exactly when the bridge was built.  At that time, people used the road for horse-and-buggy traffic.  By 1935, however, the bridge was gone.  There is no evidence that there has been any bridge or other means of crossing the creek after 1935.  The creek, which is now only a dry creek bed most of the time, is approximately four to six feet below the level of the disputed road.  

After the bridge was gone, the disputed section of the road became impassable due to the growth of trees and brush in its path.  There is no evidence that it was used by anyone at all until Joe Vittitow, who owned property on both sides of the disputed road (some of which he later sold to the plaintiffs), hired workers to clear trees and brush from a portion of the road traversing his property.  Vittitow used the portion of the road he cleared.  To cross the creek, however, he had to use a private road on his property with a bridge.  The only incident in which anyone attempted to use Road 100 E as a through road involved a police car chase in which both the police car and the vehicle being pursued crashed and became stuck in the creek bed.  Area residents instead drove east to a parallel north-south road and then south to connect to Illinois State Route 185.

The plaintiffs bought their property in three separate transactions between August 1988 and December 1989.  Carolyn Hart described the disputed section of Road 100 E as being a "path" when she first saw the land prior to the first transaction in 1988.  She testified that the township maintained and removed snow from Road 100 E only from its intersection with Route 185 to the southwest corner of the plaintiffs' property.  She further testified that she could drive from that point north to the bank of the creek in a pickup truck but not in a car.  There was no evidence to the contrary.  

There is conflicting evidence regarding when the township first decided to reopen the disputed stretch of Road 100 E.  According to the defendants, the plaintiffs thwarted efforts to make the road passable as early as 1992 by threatening workers and erecting a barricade.  According to the plaintiffs, the grading work done on the roadway in 1992 at the behest of Joe Vittitow did not constitute an attempt to reopen the highway for public use, and no subsequent attempts were made to improve the road until 2000. 

On June 15, 2000, the plaintiffs filed a complaint seeking to enjoin the township from entering their property to improve the old road or replace the bridge and seeking damages for a prior trespass to their property by township employees.  The case proceeded to a bench trial on September 23, 2002.  In their written closing arguments, submitted shortly thereafter, the plaintiffs contended, much as they do on appeal, that the section of Road 100 E abutting their property had been abandoned by the Town of Shafter.  They argued that the road had not been used at all by the public at least since 1935 and that the public had demonstrated its intent to abandon the road by accepting a safer and more convenient parallel route in its stead, thereby satisfying both of the elements necessary to establish the abandonment of a public road.  See 
Chicago & Eastern Illinois Ry. Co. v. Road District No. 10
, 353 Ill. 160, 165, 187 N.E. 155, 157 (1933).

On February 11, 2003, the trial court entered an order finding for the defendants.  The court found that the road had not been used for a period of time sufficient to sustain a finding of abandonment.  It found, however, that because the alternative route was circuitous, it did not fulfill the same essential purpose as the disputed road.  Therefore, the court concluded, the road could not be deemed to have been replaced by the alternate route.  This appeal followed.

II.  ANALYSIS

Once established, a public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute (see 605 ILCS 5/6-303 (West 2000)) or abandoned.  Nonuse of the road, standing alone, is insufficient to establish an abandonment of the highway by the public.  
Chicago & Eastern Illinois Ry. Co.
, 353 Ill. at 165-66, 187 N.E. at 157; 
Feldker v. Crook
, 208 Ill. App. 3d 1012, 1025, 567 N.E.2d 1115, 1124 (1991).  Rather, an abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist.  
Chicago & Eastern Illinois Ry. Co.
, 353 Ill. at 165, 187 N.E. at 157; 
Yaste v. Rust
, 169 Ill. App. 3d 800, 803, 523 N.E.2d 1125, 1127 (1988).  

In the instant case, there is no question that the road has not been used for a period of time sufficient to establish abandonment.  The bridge was missing by 1935, making it impossible to ford the creek and therefore impossible to use Road 100 E as a through road.  Trees and brush grew in the roadway, making it completely impassable even for traffic wishing to drive a part of the way up the road without crossing the creek.  The parties agreed that there was no evidence of any use of the road other than by the owners of private property abutting the road after Joe Vittitow cleared some of the trees and brush from it.  See 
Brockhausen v. Boehland
, 137 Ill. 547, 548, 27 N.E. 458, 459 (1891) (where the supreme court held that a road had been abandoned even though the farmer whose land it traversed used it daily).  The parties dispute the exact period of nonuse.  The defendants argue that because the plaintiffs thwarted attempts to reopen the road beginning in 1992, the period of nonuse was from 1935 to 1992 (a period of 57 years), while the plaintiffs contend that the relevant time frame was from 1935 until they filed their complaint in 2000 (a period of 65 years).  We find this distinction to be irrelevant; either way, we agree with the trial court that the road was unused for a sufficient period of time. 

There is likewise no question that the public did not acquire a 
new
 road in lieu of the disputed section of Road 100 E.  Rather, traffic followed alternate routes on previously existing roads.  The question before us, then, is whether the public's long-standing use and acceptance of these alternate routes is sufficient to demonstrate a public intent to abandon the old road.  In contending that it is not, the defendants argue that (1) the public must acquire a new road to replace the old road and (2) the new road must be in close proximity to and serve the same essential function as the abandoned road it is replacing.  The plaintiffs contend that reverting to a preexisting route sufficiently demonstrates the public's intent to abandon the old road.

We agree with the plaintiffs that the acceptance of a preexisting alternate route can suffice to demonstrate abandonment–at least in certain circumstances.  To hold otherwise would require us to ignore the supreme court's express statement in 
Chicago & Eastern Illinois Ry. Co. 
that public intent to abandon a road may be inferred 
either
 where the public has acquired the right to another road "
or where the necessity for another road has ceased to exist
."  (Emphasis added.)  
Chicago & Eastern Illinois Ry. Co.
, 353 Ill. at 165, 187 N.E. at 157.  

We believe, however, that some circumstance must change in order to cause the presumed necessity for the road to 
cease
 to exist.  Otherwise, the long-standing principle that something more than the mere nonuse of the road must be shown to demonstrate abandonment would be eviscerated.  The law imposes this additional burden because a road is an indispensable public necessity that the public would not abandon without replacing.  See 
Taylor v. Pearce
, 179 Ill. 145, 149, 53 N.E. 622, 623 (1899) (quoting 
Champlin v. Morgan
, 20 Ill. 181, 183 (1858)).  To allow a party seeking to prove abandonment to show only that the road was never necessary in the first place (most likely by showing long-term nonuse) would fly in the face of this principle.  

In the instant case, the plaintiffs might have demonstrated that Road 100 E became unnecessary due to the advent of motorized traffic and the subsequent paving and improving of the parallel road to accommodate motor vehicles.  Indeed, the plaintiffs ask us to find that the trial court should have made just such an inference.  It was the plaintiffs, however, who bore the burden of proving by clear and satisfactory evidence that Road 100 E had been abandoned.  
Highway Commissioners of Town of Lanesville v. Kinahan
, 240 Ill. 593, 601, 88 N.E. 1044, 1046 (1909).  They did not offer any evidence concerning improvements that may have been made to the parallel road at the relevant time to make it a superior route.  See, 
e.g.
, 
Brockhausen
, 137 Ill. at 551, 27 N.E. at 459 (noting that an alternate route was obviously a better route than the original road–and thus could be presumed to have been intended as a substitute for the old road–in part because it was safer).  Thus, the plaintiffs failed to meet this burden.

Moreover, as the defendants contend and the trial court apparently found, the principles behind the law of abandonment implicitly include a requirement that the alternate route actually serve the same purpose as the abandoned road.  As we have previously noted, a road is an indispensable public necessity.  
Taylor
, 179 Ill. at 149, 53 N.E. at 623; 
Champlin
, 20 Ill. at 183.  This is true, as a matter of law, of 
any
 road.  The plaintiffs argue that Road 100 E is not indispensable because there is no contention that any landowners would lack access to their property without reopening the disputed section of the road.  They base their contention on 
Yaste v. Rust
, a Third District decision.  There, a public road had fallen into nonuse for a period of more than 60 years.  
Yaste
, 169 Ill. App. 3d at 801-02, 523 N.E.2d at 1126.  A landowner, who had previously gained access to his otherwise landlocked property by using private roads on neighboring property with permission, petitioned the local road commissioner to maintain the old public road when the neighboring property was sold and the new owner denied him access to the private roads.  
Yaste
, 169 Ill. App. 3d at 801, 523 N.E.2d at 1126.  Obviously, the necessity of the public road for the property owner in 
Yaste
 is unusually compelling.  However, contrary to the plaintiffs' contention, the opinion did not rely on his status as a landlocked property owner to decide the case.  Rather, the court found determinative the fact that there had never been a legal right to an alternate route accessing his property–in other words, there was no other route serving the same purpose as the road alleged to have been abandoned.  Although the court noted the compelling need of the landlocked plaintiff for the old public roadway, it did not indicate that its holding would have been different absent that circumstance.  
Yaste
, 169 Ill. App. 3d at 803, 523 N.E.2d at 1127.

In the instant case, the trial court expressly found that the parallel road most commonly used as an alternative to Road 100 E is approximately one-half mile east of Road 100 E and that, therefore, by taking this road, motorists add approximately one mile to their journey (one-half mile east to reach the alternate road and one-half mile of additional driving on Route 185).  Significantly, the court found that this drive doubles the distance needed to travel directly to Route 185 on Road 100 E.  This factual finding is supported by the evidence.  Indeed, as the defendants point out, the additional distance may actually be somewhat longer than one mile.  Route 185 curves southward between its intersection with Road 100 E and its intersection with the alternate road, thereby requiring motorists to drive a greater distance south to reach it on the alternate road than would be necessary on Road 100 E.  While an increase of 1 mile or 5 minutes may be insignificant in the context of a route covering 10 miles, it is very significant in the context of a journey of 1 to 2 miles.  We think the trial court properly ruled that an alternate route that doubles a journey cannot possibly serve the same purpose as the road alleged to be abandoned.  We conclude, therefore, that the trial court correctly determined that Road 100 E has not been abandoned as a public highway.

III.  CONCLUSION

For the reasons stated, we affirm the judgment of the trial court. 

Affirmed.

HOPKINS and WELCH, JJ., concur.