Rule 23 order filed
June 26, 2014;
Motion to publish granted
August 4, 2014.

2014 IL App (5th) 130381

NO. 5-13-0381

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ROBERT L. CHAMNESS, RICHARD TWEEDY, and BEVERLY TWEEDY, | ) ) ) | Appeal from the Circuit Court of Union County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 07-CH-37 |
| ALLEN MAYS, JANEAN MAYS, and UNION COUNTY, ILLINOIS, | ) ) ) ) | Honorable Charles C. Cavaness, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justices Spomer and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1     This is an appeal from the entry of summary judgment in favor of the defendants, Allen and Janean Mays,[1] finding that a disputed portion of Otten Lane in Union County, Illinois, is a public roadway. The plaintiffs, Robert L. Chamness, Richard Tweedy, and Beverly Tweedy, maintain that the disputed portion of Otten Lane was abandoned by Union County and is no longer a public roadway. The defendants assert that the road was

_____

[1]The reference to "defendants" refers to the Mays defendants, and not defendant Union County. When Union County is referenced, it is identified specifically.

1

not abandoned and that it remains a public roadway. The plaintiffs and defendants filed competing claims, counterclaims, and motions for summary judgment. The trial court granted the defendants' motion for summary judgment. The plaintiffs filed a timely notice of appeal. We affirm.

¶ 2                                    BACKGROUND

¶ 3    This appeal relates to a small portion of Otten Lane located in Union County. Otten Lane is a gravel, east-west road. Portions of Otten Lane indisputably remain county roads. It is undisputed that Otten Lane is a public roadway from New Route 51 on the east to the Tweedy mailbox on the west. It is also considered a public roadway and is maintained by the Union County Highway Department from Casper Church Road on the west to the Treece property on the east. The disputed area is between the two public sections mentioned. The portion of Otten Lane in dispute is approximately one-half mile long.

¶ 4    In the past Otten Lane was used to travel from Spanish Bluff Road in the east to Casper Church Road in the west. Union County ceased maintaining the disputed portion of Otten Lane in the 1960s. In 1964 Union County stopped collecting motor fuel taxes for the disputed portion of Otten Lane. Utility poles were placed, and still remain, alongside Otten Lane. Over the years the disputed portion of the road has become overgrown with brush and trees.

¶ 5    On June 8, 1989, Thomas Gilchrist, Union County Superintendant of Highways, wrote a "to whom it may concern" letter in which he stated that he had reviewed the road

leading from New Route 51 to the Roberts' land and certified that the "Union County Highway Department maintains and considers the said East-West gravel road to be 'public' from New Route 51 westerly to the North-South driveway of Earl Thompson."

¶ 6    In April 1993, the Tweedys purchased their 21-acre property. Their property sits alongside the beginning of the disputed portion of Otten Lane. Richard testified in a discovery deposition that he bought the land because it was a dead-end road. In her discovery deposition Beverly stated because their road was a dead end when they bought it, she believes that the disputed portion of Otten Lane is not a public road. Beverly testified that after she and her husband acquired the property an issue came up about access to it. She was told that they were landlocked. As a result, various easements were obtained. Beverly testified that she felt that there would be no need for easements if it was a public road. She stated that she was not aware of any other roadway that connected Casper Church Road to Route 51.

¶ 7    A few months after the Tweedys acquired their property, Beverly's father, Robert Chamness, bought the property just to the east of the Tweedys' property. The property was purchased from Rebecca Campbell, Earl Thompson's daughter. In his discovery deposition, Robert Chamness testified that the stretch of Otten Lane that goes beyond the mailboxes and his driveway is not part of the county road. He maintains the part of the road from the mailboxes to the last driveway, which he said was created by easement.

¶ 8    Just to the south of the Tweedys' property is approximately 195 acres owned by the Browns. The Browns' property has direct access to Casper Church Road and Old

Highway 51. In 2001, the Browns gave the defendants a five-acre parcel of land along the disputed portion of Otten Lane and bordering the Tweedys' property. In his discovery deposition, Allen testified that he received the property in exchange for work he performed managing the Browns' property. Allen stated that in his work for the Browns, he drove the property lines and knew that an overgrown roadbed running from east to west existed. This roadbed is the disputed portion of Otten Lane. Prior to having the property conveyed to him, he checked on the roadbed with the Department of Transportation and was given plat maps and motor fuel tax maps of county roads. The only roadway which accesses the defendants' property is the disputed portion of Otten Lane.

¶ 9    Shortly after acquiring the land, Allen met with the plaintiffs about his intent to build a home on the property and access to the home. In his discovery deposition, Richard testified that Allen asked him for an easement so that he could build a driveway to the house he planned to build. Richard testified that he told Allen he would need to consult with an attorney. Beverly testified in her discovery deposition that Allen asked to extend the road past the Tweedys' driveway to access the home he planned to build. Beverly stated that they told Allen they would need "to get some legal involvement." Robert testified in his discovery deposition that when they met about an easement, he told Allen that the best way to build a road to access Allen's property would be to hire an attorney and decide on an easement. Allen does not remember discussing an easement with the plaintiffs and testified that if the Tweedys had offered him an easement he would

4

not have accepted because he believed the public road was still there adjacent to his property and he should have the opportunity to use it.

¶ 10     Within days of the meeting between the Mays, the Tweedys, and Robert, Allen started work clearing the disputed portion of Otten Lane. A contractor bulldozed the roadbed and put down gravel. The contractor called Allen and informed him that the plaintiffs objected to the heavy equipment being there and the work on the roadway.

¶ 11     Richard testified that because trees and brush were removed, it caused water to run off onto his land and to pool. Beverly testified that when the unused portion of Otten Lane was cleared and covered with gravel it caused water to pool in her front yard. She claimed that they had to put in a circular driveway with a drainage pipe because of the drainage issues caused by clearing and graveling the unused portion of Otten Lane. Robert stated that the truck hauling the gravel drove 550 feet on his property and because of its weight destroyed the existing road. He stated that he had to make repairs to the road. He also claimed that the removal of trees from the roadbed created a downhill path for the water to run, causing water damage to his property. Allen testified that the contractor did not move dirt except as it was needed to remove trees. To his knowledge the contractor did not redirect the natural flow of water onto the plaintiffs' property.

¶ 12     Bill Boyd testified by discovery deposition. He stated that he was the Union County engineer from 1989 through 2009. As county engineer he investigated the dispute over Otten Lane. He stated that after hearing both sides of the argument, he decided to research the property conveyances and the deeds of all the property owners.

5

He created a report of his findings that he presented to the Union County Board of Commissioners. Mr. Boyd looked at the Illinois Department of Transportation District 9 maintenance plats for Union County. Based on those records he discovered that from the 1800s through 1962 Otten Lane had been maintained by the Union County Highway Department. He also reviewed the motor fuel tax. Motor fuel taxes had been spent on the road through 1964. He found that there were no vacations filed on that road either at District 9 or in the Union County clerk's office.

¶ 13 Mr. Boyd testified that he went to the abstractor who provided him with the deeds for the properties in the disputed area. He found that in the conveyances of the property to the Millers in 1962, to the Roberts in 1978, to the Hollys in 1989, and to the Tweedys in 1993, the properties were considered to abut a public road. There was also a variety of quitclaim deeds providing private easements over what Mr. Boyd thought was a public road. He did not believe it was necessary because a private easement cannot remove a public interest in the road. There are utility poles that continue past the Tweedys' driveway west. He testified that typically utility companies put utility poles along roadways for ease of maintenance. He testified that the portion of Otten Lane that had not been maintained by the county since 1964 was overgrown with brush.

¶ 14 Mr. Boyd testified that the fact that a county roadway had fallen into disrepair does not mean that it was abandoned as a public roadway by the county and does not mean that the county can no longer maintain it. He further stated that if a county road has fallen into disrepair, adjoining landowners cannot take over the road and prohibit others

6

from using it. He testified that based on his research, Otten Lane is a county roadway. Further, he stated that in his evaluation of the roadway, he found that there has never been a formal abandonment of the roadway by the county. He stated that there has not been an alternative road constructed connecting New Route 51 to Casper Church Road or connecting New Route 51 to the defendants' property. He testified that it was his opinion that Otten Lane was a county road that was not currently maintained by the county.

¶ 15   Mr. Boyd testified that he was aware of the letter written by Thomas Gilchrist at the time he made his findings of fact. He stated that he did not agree with the letter. It uses the phrase "public road goes to 100 feet west of the northeast corner of the Roberts' property." Mr. Boyd felt Mr. Gilchrist meant that the county maintained that portion identified, not that he was declaring what portion was and was not a public right of way. He pointed out that there was no use of the term "vacation." Mr. Boyd stated that, as far as he knew, Mr. Gilchrist, as Union County Superintendant of Highways, never vacated any roads; he just stopped maintaining them.

¶ 16   On November 21, 2006, Bill Jackson, chairman of the Union County Board of Commissioners, sent a letter to Rick and Beverly Tweedy and Allen and Brian Mays stating that after reviewing the material furnished to the board by Mr. Boyd, it had determined that Otten Lane had never been vacated and that access to the road could not be denied.

¶ 17   On November 21, 2007, the plaintiffs filed a complaint for injunctive relief enjoining the defendants from asserting any right, title, or interest in the disputed portion

of Otten Lane. On February 1, 2008, the defendants filed a motion to dismiss.

¶ 18 On February 15, 2008, the plaintiffs filed a second amended complaint. It was based primarily on the assertion that Union County abandoned the disputed portion of Otten Lane. Count I sought to enjoin Union County from asserting any right, title, or interest in the disputed portion of Otten Lane. Count II sought to enjoin the Mays from entering the disputed portion of Otten Lane. Count III was a claim against the Mays for trespass for the unauthorized bulldozing of the plaintiffs' property. Count IV was a claim to quiet title, and count V was a claim for declaratory judgment. The second amended complaint was based on the premise that the defendants had no rights or claims to any part of the disputed portion of Otten Lane.

¶ 19 In May 2008, the defendants filed a motion to dismiss. On April 12, 2010, the court denied the defendants' motion to dismiss the second amended complaint.

¶ 20 On February 28, 2011, the defendants filed an answer to the plaintiffs' second amended complaint and a counterclaim. The counterclaim was premised on the assertion that the disputed portion of Otten Lane retained its character as a public roadway and that access to it could not be denied. The defendants sought an injunction enjoining the plaintiffs from interfering with their right of access to their property via Otten Lane. They also filed a counterclaim to quiet title and for declaratory relief asking the court to declare that Otten Lane remains a public roadway. On March 25, 2011, the plaintiffs filed a motion to strike the defendants' jury demand and counterclaim on the ground that they were untimely. On May 13, 2011, the court denied the plaintiffs' motion to strike.

¶ 21    On August 26, 2011, the defendants filed a motion for summary judgment.  On July 6, 2012, the plaintiffs filed a motion for summary judgment and a response to the defendants' motion for summary judgment.  The motions focused on the issue of whether Union County intended to abandon the disputed portion of Otten Lane.

¶ 22    On March 12, 2013, the court entered an order granting the defendants' motion for summary judgment.  It found that there was no evidence that Otten Lane was ever vacated.  It found that the evidence established that the disputed portion of Otten Lane had not been maintained by Union County or used as a roadway since approximately 1964.  It found that the road was overgrown with trees and brush, that no motor fuel taxes are received on the roadway, and that the roadway is not listed as a road in the Illinois Department of Transportation highway and road maps.  It held that nonuse of a roadway alone is insufficient to establish an intent of abandonment.  The court held that Mr. Gilchrist's letter does not state that any portion of Otten Lane had been abandoned.  It merely stated that a portion of the road is public.  It found that "[w]hether the language contained in the letter means the rest of the road had been abandoned is unclear and is simply speculation."  The court held that because public roads are indispensible, an abandonment will only be found when the public has waived the right to another road or where the necessity for another road has ceased to exist.  The court found that the defendants' property is landlocked, that they have never had the legal right to alternate access to their property, and that there was no new or existing road, other than Otten Lane, that serves the defendants' property.  The court held that Otten Lane was a public

necessity and that Union County did not intend to abandon the disputed portion of that road. The court granted the defendants' motion for summary judgment.

¶ 23   The plaintiffs filed a timely notice of appeal.

¶ 24                                      ANALYSIS

¶ 25   The plaintiffs argue that Union County abandoned the disputed portion of Otten Lane, causing the property to revert to private parties, including the plaintiffs. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). We review a trial court's summary judgment ruling *de novo*. *Bituminous Casualty Corp. v. Iles*, 2013 IL App (5th) 120485, ¶ 19. "Under the *de novo* standard of review, we perform the same analysis a trial court would perform and give no deference to the judge's conclusions or specific rationale." *Id*.

¶ 26   The plaintiffs argue that Union County intended to and did abandon the disputed portion of Otten Lane. They assert that Thomas Gilchrist's letter dated June 8, 1989, declared that the disputed roadway was no longer public. They allege that Mr. Gilchrist's 1989 statement is direct evidence of his assessment that Union County no longer had any necessity for the disputed portion of Otten Lane and, therefore, had abandoned the same. The plaintiffs contend that Mr. Boyd and the Union County Board of Commissioners' opinions were of no consequence because the disputed portion of Otten Lane had already reverted to its original owners by the time they set forth their opinions.

¶ 27    The defendants argue that the letter written by Mr. Gilchrist is merely an opinion letter and that it does not address the disputed portion of Otten Lane. They contend that the letter addresses only a particular section of gravel road and does not mention any portion of the road to the east or the west of that particular section. The trial court found that Mr. Gilchrist's letter did not state that any portion of the road was abandoned and only indicated that a certain portion was public. It held that "[w]hether the language contained in the letter means the rest of the road had been abandoned is unclear and is simply speculation."

¶ 28    Mr. Gilchrist's letter described a portion of the road and certified that the Union County Highway Department maintained and considered that portion of the gravel road to be public. We agree with the trial court that it is unclear whether Mr. Gilchrist meant that the portion of the road beyond the section he declared to be public was abandoned. He never used that term, and to determine that he implied that the rest of the road was abandoned and no longer public is mere speculation. A decision cannot be based on guess, speculation, or conjecture. *Brown v. Kidd*, 217 Ill. App. 3d 860, 868 (1991).

¶ 29    The plaintiffs argue that the condition, age, and size of the disputed portion of Otten Lane indicate that it was abandoned. They assert that the disputed portion of the road had not been used in decades and had become a wilderness overrun by trees and brush.

¶ 30    An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned.

*Hart v. Town of Shafter*, 348 Ill. App. 3d 713, 715 (2004). Nonuse of the road alone is insufficient to establish abandonment by the public. *Id.* Abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist. *Id*. at 715-16. For the presumed necessity for the road to cease to exist some circumstance must change. *Id*. at 716-17. This additional burden is imposed because a road is an indispensible public necessity that the public would not abandon without replacing. *Id*. at 717.

¶ 31    The plaintiffs argue that there are wider, safer, paved, and more convenient routes to use to travel between Spanish Bluff Road and Casper Church Road. The plaintiffs contend that the other routes show there is a lack of necessity for the disputed portion of Otten Lane.

¶ 32    The instant case is similar to *Hart*. In *Hart* the plaintiffs filed a complaint seeking to enjoin the defendants from entering onto their property to replace a bridge that had once been a part of a township road that ran through their property. *Hart*, 348 Ill. App. 3d at 713. The appellate court found that although there was no question that the road had not been used for a long period of time, the public did not acquire a new road in lieu of the disputed section of road. *Id.* at 716. Instead, traffic merely followed alternate routes on previously existing roads. *Id.* The court examined whether some circumstance changed causing the presumed necessity for the disputed portion of the road to cease to exist and whether any alternate route served the same purpose as the abandoned road. *Id*. at 716-17. The court found that the parallel road most commonly used as an alternate

12

route to the disputed portion of the road would double the journey and could not possibly serve the same purpose as the road alleged to be abandoned. *Id*. at 718. It concluded that the disputed road had not been abandoned as a highway. *Id*.

¶ 33    In the instant case, the disputed portion of Otten Lane fell into disrepair and trees and brush grew over the gravel road. As in *Hart*, no acceptable alternate route has been established. The defendants are not able to access their property via a public road without access to the disputed portion of Otten Lane. In their discovery depositions Richard and Beverly both testified that there are no alternate parallel routes to the disputed portion of Otten Lane. The plaintiffs contend that there is an alternate route from Spanish Bluff Road to Casper Church Road via New Route 51. No evidence regarding this alleged alternate route was presented to the trial court. The distance of this alternate route as evidenced in the Google map attached to their brief is 3.4 miles. The disputed portion of Otten Lane is approximately one-half mile. In *Hart* the parallel route most commonly used as an alternate route added about one mile to the route and was found not to serve the same purpose as the disputed road. The route suggested by the plaintiffs in their brief would add almost three miles to the commute. The route suggested by the plaintiffs does not serve the same purpose as the disputed portion of Otten Lane.

¶ 34    In *Yaste v. Rust*, 169 Ill. App. 3d 800 (1988), the plaintiff wanted to have access to the roadway at issue so he could access his property. *Id.* at 801. Previously he had reached his property by traveling across neighboring land with the neighboring

13

landowners' consent. *Id*. When the neighboring property was sold, the plaintiff lost his consensual passage to it. *Id*. The plaintiff petitioned to have the instant roadway maintained by the county. *Id*. The court found that the road had not been abandoned. *Id*. at 803. It held that while plants had grown up on the road and it had been many years since the road was used for passage or maintained, it was determinative that "the plaintiff, who seeks to use the road for access to his otherwise landlocked property, neither has now nor has had at any relevant time in the past, the legal right to an alternate access route to his property." *Id*.

¶ 35    In the instant case, as in *Yaste* and *Hart*, the determinative factor is that there has never been a legal right to an alternate route serving the same purpose as the disputed portion of Otten Lane. Because a road is an indispensible public necessity that the public would not abandon without replacing, the disputed portion of Otten Lane has not been abandoned by Union County.

¶ 36    The plaintiffs argue that the trial court's reliance on the defendants' landlocked status is misplaced. The plaintiffs contend that the trial court's decision rested largely on its concern that the defendants would be landlocked. The trial court did not rely heavily on the defendants' landlocked status. It held:

> "In this case, Defendants['] property is landlocked. They can only gain
> access to their property through a private drive at Choate Mental Health Center
> then by all-terrain vehicles across farm ground. Here, as with the land owner in

14

*Yaste v. Rust*, 169 Ill. App. 3d 800, 523 N.E.2d 1125 (1988), the landlocked property owner has never had the legal right to alternate access to his property."

The trial court's decision turned on the fact that the defendants did not have a legal right to alternate access to their property. Even if, as the plaintiffs assert, the trial court's decision rested largely on its concern that the defendants would be landlocked, it does not matter because this court reviews the trial court's summary judgment ruling *de novo* and we give no deference to the trial court's rationale.

¶ 37   Finally, the plaintiffs argue that Union County is estopped from claiming it has retained rights to the disputed portion of Otten Lane. They assert that Union County's conduct in the decades preceding the purchase of their property in 1993 led them to believe that the disputed portion of Otten Lane had been abandoned and that they would not be purchasing homes on a through road. They claim "they relied upon their reasonable beliefs that they would be enjoying the solitude and quiet living that comes with residing in the country at the end of a dead end road." The plaintiffs assert that Union County's conduct should bar it from opening up Otten Lane and undermining the reasons why they purchased their property.

¶ 38   That private possession of a portion of a street has been allowed for any period of time is not sufficient to create an estoppel. *City of DeKalb v. Luney*, 193 Ill. 185, 190 (1901). To create an equitable estoppel against the public, the city must have long withheld the assertion of control over the portion of the street in question, private parties must have been, by the acts of those representing the public, induced, in good faith, to

15

believe the street had been abandoned by the public, and the private party must have erected structures on the street, or made improvements thereon of such a lasting and valuable character that to permit the public to assert the right to repossess itself of the premises would entail such a great pecuniary loss and sacrifice upon the private party that justice and right would demand that the public be estopped. *Id*.

¶ 39 *Zemple v. Butler*, 17 Ill. 2d 434 (1959), involved a dispute over a portion of a platted street that, over the years, had been used extensively by the owners of the land abutting it for their private purposes. *Id.* at 435-36. From 1892 to 1945 fences were placed on and about the disputed portion of the platted street. *Id*. In 1945 the plaintiffs, who were the owners of the land abutting the disputed platted street, constructed a concrete driveway and basketball court with standards, backboard, and hoop on the street. *Id*. at 436. In 1956 the defendants moved next to the plaintiffs and gave notice to the plaintiffs requesting they remove the basketball court and their fence. *Id*. The court held that while a municipality may be estopped by its conduct to assert its right to a platted street, as where there has been a long period of nonuse and permanent buildings or improvement had been constructed on the land in good faith, such was not the case there. *Id*. at 439. The court held that estoppels against a municipality should be used sparingly because streets are dedicated for the use of the public and the public's right to use them should not be treated lightly. *Id*. The court found that the plaintiffs' driveway, basketball courts, and shrubs were not permanent improvements that would estop the city from claiming its right to the street. *Id*.

¶ 40   In the instant case, the plaintiffs have not made any improvements to the disputed portion of Otten Lane.  The trees and shrubbery on the lane had naturally grown over it.  There are no structures or improvements on the disputed area.  Because the disputed portion of Otten Lane is a public roadway and the plaintiffs have not constructed any structures or made any improvements on it, the defendant Union County cannot be estopped from claiming its right to the road.

¶ 41   The disputed portion of Otten Lane is a public roadway.  While it had fallen into disrepair, it was not abandoned by the public because the presumed necessity for the disputed portion of the road had not ceased to exist and there was no alternate route that served the same purpose as the disputed portion of Otten Lane.  Union County cannot be estopped from claiming its right to the disputed portion of Otten Lane because it was not abandoned and the plaintiffs had not constructed any structures or made any improvements on it, let alone anything of such a lasting and valuable character that to permit the public to assert the right to repossess the road would entail such a great pecuniary loss and sacrifice to the plaintiffs that justice and right would demand that the public be estopped.  Because the pleadings, depositions, and admissions on file show that there was no genuine issue of material fact and the moving party was entitled to a judgment as a matter of law, we affirm the trial court's order granting the defendants' motion for summary judgment.

¶ 42                          CONCLUSION

¶ 43    For the reasons stated, we affirm the judgment of the circuit court of Union County.


¶ 44    Affirmed.

2014 IL App (5th) 130381
NO. 5-13-0381
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| ROBERT L. CHAMNESS, RICHARD TWEEDY, and BEVERLY TWEEDY, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Union County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 07-CH-37 |
| | ) | |
| ALLEN MAYS, JANEAN MAYS, | ) | |
| and UNION COUNTY, ILLINOIS, | ) | Honorable |
| | ) | Charles C. Cavaness, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:** June 26, 2014
**Motion to Publish Granted:** August 4, 2014
**Opinion Filed:** August 4, 2014

_____

| **Justices:** | Honorable Bruce D. Stewart, J. |
| | |
| | Honorable Stephen L. Spomer, J., and |
| | Honorable S. Gene Schwarm, J., |
| | Concur |

_____

| **Attorneys for Appellants** | Robert F. Epperson, Jr., Jennifer S. Kingston, Dowd Bennett LLP, 7733 Forsyth, Suite 1900, St. Louis, MO 63105 |

_____

| **Attorneys for Appellees** | Charles E. Schmidt, Megan L. Orso, Brandon, Schmidt & Goffinet, 916 West Main Street, P.O. Box 3898, Carbondale, IL 62902 (attorneys for Allen and Janean Mays) |
| | |
| | Joseph A. Bleyer, Bleyer and Bleyer, 601 West Jackson Street, P.O. Box 487, Marion, IL 62959-0487 (attorney for Union County– adopted brief of appellees Allen and Janean Mays) |

_____